**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **JOSE GONZALEZ GOMEZ,** | ) | |
| **Jesus Salvador Hernandez-Devora, et. al.** | ) | |
| | ) | |
| **On behalf of themselves, and** | ) | |
| **all other persons similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No.: 2:22-cv-02198-JAR-ADM** |
| | ) | |
| **EPIC LANDSCAPE PRODUCTIONS,** | ) | |
| **L.C.** | ) | |
| | ) | |
| | ) | |
| **Defendant**. | ) | |

<u>**MOTION AND INCORPORATED SUGGESTIONS IN SUPPORT OF PLAINTIFFS'**</u>
<u>**MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS**</u>
<u>**REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL**</u>

## TABLE OF CONTENTS

I.    INTRODUCTION AND BACKGROUND ........................................................................ 1

II.   STATEMENT OF RELEVANT FACTS ...................................................................... 4

III.  ARGUMENT ............................................................................................................... 6

  A.    APPLICABLE STANDARD OF REVIEW ................................................................. 7

    1.    Plaintiffs have sufficiently demonstrated that at all times, Defendants represented
          that they would pay overtime premiums. ......................................................................... 8

    2.    Plaintiffs have sufficiently established a common practice by Defendants of failing
          and refusing to compensate Hourly Laborers one- and one-half times their regular
          rate of pay for work in excess of 40 hours in a workweek. ................................................ 8

  B.    THE PROPOSED CLASS SHOULD BE CERTIFIED ............................................... 10

    1.    Plaintiffs' Claims are Particularly Appropriate for Certification Under Rule 23. .... 10

    2.    The Requirements of Rule 23(a) Are Satisfied ........................................................ 13

      a.    The Class Satisfies the "Numerosity" Requirement of Rule 23(a)(1)....................... 13
      b.    The class is sufficiently ascertainable within the law of this District. .................... 14
      c.    Plaintiffs Satisfy the "Commonality" Requirement of Rule 23(a)(2). ..................... 14
      d.    Plaintiffs Satisfy the "Typicality" Requirement of Rule 23(a)(3)........................... 16
      e.    The Representative Parties Will Fairly and Adequately Protect the Interests of the
            Class as Required by Rule 23(a)(4). ........................................................................ 17

    3.    The Requirements of Rule 23(b)(3) Are Also Satisfied ........................................... 19

      a.    Common Questions Predominate. ........................................................................... 19
      b.    A Class Action is "Superior" To Other Means of Adjudication. ............................. 21

    4.    Class Counsel Should Be Approved Pursuant to Rule 23(g). .................................. 23

IV.   CONCLUSION ........................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 613 (D. Kan. 1995) ................................ 13

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) ......................................................... 21

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013) .................................................................................................................... 10, 11

*Aquila ERISA Litig.*, 237 F.R.D. 202, 207, 213 (W.D. Mo. 2006) .................................... 8, 11, 23

*Bird Hotel Corp. v. Super 8 Motels, Inc.*, 246 F.R.D. 603, 608 (D.S.D. 2007) ........................... 22

*Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005) .................................................. 8, 20

*Bradford v. Agco Corp.*, 187 F.R.D. 600, 604 (W.D. Mo. 1999) ................................................. 13

*Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979) .............................................................. 8, 10

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660-61 (7th Cir. 2004) .................................... 23

*CGC Holding Co. v. Broad & Cassel*, 773 F.3d 1076, 1087, 1096 (10th Cir. 2014) .................. 19

*Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) ...................................................................... 8

*Craft v. Philip Morris Companies, Inc.*, 190 S.W.3d 368, 383 (Mo. App. E.D. 2005) ............... 20

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. Minn. 1995) ................................. 17

*Dukes*, 564 U.S. at 351 n.6 .................................................................................................. 10, 11

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) ............................. 16, 18

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974) ........................................................ 7

*EpiPen Mktg., Sales Practices & Antitrust Litig.*, No. MDL No: 2785, 2020 U.S. Dist. LEXIS 40789, at *28, 43, 44, 46, 84 (D. Kan. Feb. 27, 2020) ............................. 10, 11, 13, 15, 20, 21

*Garcia v. Tyson Foods, Inc.*, 255 F.R.D. 678, 688 (D. Kan. 2009) ................................... 14, 17, 20

*Garcia v. Tyson Foods, Inc.*, 766 F. Supp. 2d 1167, 1172 (D. Kan. 2011) ................................. 12

*Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155, 157 (1982) ................................... 10, 14

*Greenstein v. Meredith Corporation, Case No. 2:2011-cv-02399 (D.KAN)* ................................ 24

*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981) ........................................................ 10

*Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003) ...................... 18

*Gutierrez v. The Big Biscuit Company, Case No. 2:2019-cv-02527 (D.KAN)* ............................ 23

*Halperin v. Interpark, Inc.*, No. 07-CV-2161, 2007 WL 4219419, at *4 (N.D. Ill. Nov. 29, 2007)
............................................................................................................................ 22

*Janson,* 2010 WL 5105146, at *2 ................................................................................ 11

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ................................ 22

*Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914, 916 (10th Cir. 2018) ................................ 16, 17

*Motor Fuel Temperature Sales Practices Litig.*, 292 F.R.D. 652, 671 (D. Kan. 2013) .............. 18

*Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015) ................................ 14

*Nobles v. State Farm Mut. Auto. Ins. Co.*, 2:10-CV-04175-NKL, 2011 WL 3794021 (W.D. Mo.
Aug. 25, 2011). modified on reconsideration, 2:10-CV-04175-NKL, 2011 WL 5563444 (W.D.
Mo. Nov. 15, 2011) ..................................................................................................... 23

*Nolen v. Firebirds of Overland Park, Case. No. 2:2017-cv-02237 (D.KAN)* ............................ 24

*Paunovic v. OBI Seafoods LLC*, No. C21-884 MJP, 2022 U.S. Dist. LEXIS 163162, at *29
(W.D. Wash. Sep. 9, 2022) ........................................................................................ 12

*Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982) .................................. 13

*Petrone v. Werner Enters., Inc.*, 2015 WL 4772830, at *2 (D. Neb. Aug. 12, 2015) ................. 12

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................ 22

*Pinkston v. Wheatland Enterprises, Case No. 2:2011-cv-02498 (D.KAN)* .......................... 24

*Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995) ...................................... 20

*Redmon,* 2008 WL 656075, at *5 ............................................................................ 22, 23

*Rex v. Owens*, 585 F.2d 432, 436 (10th Cir. 1978) ...................................................... 13

*Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 39 (1st Cir. 2003). ................. 20

*Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010) ...................................... 17

*Syngenta AG Mir 162 Corn Litig.*, No. MDL No. 2591, 2016 U.S. Dist. LEXIS 132549, at *1359 (D. Kan. Sep. 26, 2016) ................................................................................................ 14

*Troy v. Red Lantern Inn, Inc.*, 2007 WL 4293014, at *5 .......................................................... 22

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ........................................ 15, 20

*Urethane Antitrust Litig.*, 251 F.R.D. 629, 634 (D. Kan. 2008) .................................................. 8

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50, 352 (2011) ...................................... 10, 14

## Statutes and Rules

Fed. R. Civ. P. 23 ........................................................................................................... passim

Fed. R. Civ. P. 23(a) ...................................................................................................... passim

Fed. R. Civ. P. 23(a)-(b) ...................................................................................................... 13

Fed. R. Civ. P. 23(a)(2) ....................................................................................................... 14

Fed. R. Civ. P. 23(a)(3) ....................................................................................................... 16

Fed. R. Civ. P. 23(a)(4) .................................................................................................... 17, 19

Fed. R. Civ. P. 23(b) ...................................................................................................... 12, 19

Fed. R. Civ. P. 23(g) ........................................................................................................... 23

Mo. Rev. Stat. § 290.527 ........................................................................................................ 2

## Other Authorities

29 U.S.C. § 201 ..................................................................................................................... 1

## I.    INTRODUCTION AND BACKGROUND

Plaintiffs comprise a group of current and former hourly laborers who have worked for Defendants. Defendants provide lawn care and landscaping for clients in Kansas and Missouri. Defendants employ, among other workers, temporary laborers from Mexico, using the H2B visa program, as well as laborers from Puerto Rico and the Kansas City Area.

Plaintiffs worked for Defendants, Epic Landscape Productions, L.C., Epic Landscape Productions, Inc, John Constant and Marty Siler ("Epic" or "Defendants"). The named Plaintiff, Jose Gonzalez Gomez, worked as an hourly landscaping laborer, who frequently worked 80 to 100 hours per week performing manual labor, from approximately February 5, 2019 until the present. *(See, **Exhibit 1**, Deposition of Jose Gonzalez Gomez, 29:25 – 30:2).* During his employment, until July 2021, Defendants never paid Mr. Gomez any overtime premium. Likewise, Jesus Salvador Hernandez-Devora an immigrant laborer who worked for Defendants under its H-2B Visa program in Missouri and who frequently worked well over 40 hours in a workweek, and was subject to Defendants' identical failure to pay overtime premiums for work in excess of 40 hours in a workweek, despite contract terms stating that he would receive such a premium.

For the entire statutory period and until July 2021, Defendants consistently and uniformly contracted with H-2B laborers in a manner that guaranteed overtime premiums for work performed in excess of 40 hours in a workweek. And Department of Labor Regulations mandate that American workers <u>must</u> be paid, at a minimum, the identical wage as their foreign counterparts.

Plaintiffs bring this action as a hybrid state class/nationwide collective action under the Fair Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. § 201 et seq. and accompanying Missouri and Kansas common laws pursuant to breach of contract and quantum meruit/unjust enrichment. Plaintiffs allege that Defendants violated the Missouri Minimum Wage Maximum

Hours Laws law by failing to pay them, and all other similarly situated employees for all hours worked in a workweek, including overtime compensation.

Plaintiffs' Hybrid Collective and Class Action Complaint, which was filed on May 30, 2022, alleges that Defendants failed to properly compensate their houly laborers properly for all of the hours each worked.  (Pl.'s Amended Compl., ¶¶ 41-46)[1].  Specifically, Plaintiffs allege that they and other similarly-situated hourly laborers were suffered or permitted to work in excess of 40 hours in a workweek without receiving overtime compensation.  Plaintiffs, like each member of the proposed class, worked for the Defendants as hourly laborers, were paid on an hourly basis, and were not paid overtime premiums for hours worked in excess of 40 in a workweek.

Plaintiffs seek to recover back pay, individually and on behalf of the proposed class, pursuant to breach of contract claims as a result of guarantees and warranties made to hourly laborers through the course of job advertisements, as well as through direct contractual agreements with the Federal Government, and under common law theories of *quantum meruit* and unjust enrichment (Pl.'s Amended Compl., ¶¶ 102-115).

The following facts are not disputed:

- Approximately 830 hourly laborers worked for Defendants during the statutory period.  (*See, **Exhibit 2**, Class list provided by Defendants*)

- Until July 2021, the employees at issue did not receive overtime compensation for hours worked in excess of 40 in a workweek.  (*See, **Exhibit 3**, Interrogatory Responses, Interrogatory No. 10)*

- The employees at issue were uniformly classified as exempt pursuant to the same three exemptions (which Plaintiffs contend do not apply). *Id.*

---

[1] The parties entered into a tolling agreement for the period of February 1, 2022 to the date of filing.

- At all times, Defendants represented and warranted that it would pay its H-2B workers overtime at a rate of one- and one-half times their regular rate of pay for hours worked in excess of 40 in a workweek. *(See, **Exhibit 4**, Excerpts of H-2B Visa applications, 2012-2023, EPIC011816-015851).*

- During the statutory period, Defendants advertised that they would pay their hourly laborers at a rate of one- and one-half times their regular rate of pay for hours worked in excess of 40 in a workweek. *(See, **Exhibit 5**, Job Advertising, EPIC000129-EPIC000251).*

- Laborers are trained pursuant to Defendants' uniform and standardized training process. *(See, **Exhibit 6**, Deposition of Lonny Ryburn, 24:6-23).*

- Laborers are expected to follow Defendants' standardized Standard Operating Procedures that do not vary based on the individual. *Id.*

## II.    STATEMENT OF RELEVANT FACTS

1.  Plaintiffs comprise a group of current and former hourly workers who worked for Defendants.

2.   Defendants construct and maintain more than 1,600 acres of turf and landscaping in the greater Kansas City metro area. https://epicland.net/about-us/ (last visited July 21, 2023).

3.  During the statutory period, Defendants employed approximately 830 hourly  laborers that it treated as exempt from overtime compensation. (*See,* ***Exhibit 2,*** *Class list*).

4.  Defendants have a centralized payroll, to manage payroll for their employees, including hourly laborers. *(See,* ***Exhibit 7,*** *Deposition of Anne Spachman, 24:14 – 25:15).*

5.  Anne Spachman is the Director of Human Resources for Epic. *(See,* ***Exhibit 7,*** *4: 18-20).*

6.  Spachman is responsible overall for the Human Resources functions at Epic, including employee classification.  *(See,* ***Exhibit 7***, *9: 21 – 10:17; 11: 18-23).*

7.  Ernie Chaulkin is Epic's Human Resource administration assistant and is responsible for recruitment of Epic employees. *(See,* ***Exhibit 8,*** *Deposition of Ernie Chaulkin, 4:17-18; 9:24 – 10:3).*

8.  Generally speaking, Laborers' Duties include: "Mow, edge, mulch, aerate, weed, trim, water, sod, rake, dig, install sprinklers, install rock gardens and/or retaining walls and/or planters, operate vehicles and/or power equipment, fertilize, grub, plant, use, maintain, & repair tools/equipment, remove thatch/litter/debris. Provide proper upkeep of all areas of job & other related Laborer activities as per SOC/OES 37-3011." *(See,* ***Exhibit 9***, *P00085;* ***Exhibit 8,*** *16: 6-21).*

9.  Defendants rely on the H-2B process to recruit workers from foreign countries, like Mexico. *(See,* ***Exhibit 8***, *13:6-7: 26: 6-15;* ***Exhibit 10***, *Deposition of Donald Chapman, 8:8-17).*

*10.* When recruiting foreign hourly laborers, Defendants post advertisements to recruit their workforce. *(See, **Exhibit 10**, 9:19 – 10:10; **Exhibit 5**, Job Advertisements, EPIC000129-251; **Exhibit 9**, P00085).*

11. In advertising for laborer positions, advertisements generally state that overtime is available, and in some cases, that it will be paid at a rate of time and a half. *(See, **Exhibit 5**, EPIC000129-251; **Exhibit 9**, P00085).*

12. As part of the H-2B application process, Defendants are required to apply for a wage determination, using form ETA 9141. *(See, **Exhibit 10**, 10:19-24; **Exhibit 4**, Excerpts of H-2B Visa applications, 2012-2023, Bates Nos. EPIC011816-015851).*

*13.* After receiving a wage determination, Defendants then apply to import workers under the H-2B visa process, using form ETA 9142. *(See, **Exhibit 10**, 10:25 – 11:10; **Exhibit 4**, Bates Nos. EPIC011816-015851).*

14. Part of the application process involves representations about the wage rates to be paid, and whether workers will be paid overtime and at what rate. *(See, e.g., **Exhibit 11**, Bates No. EPIC015347).*

*15.* Defendants do not submit separate wage statements for different categories of employees. *(See, **Exhibit 10**, 15:21 – 16:3).*

16. Defendants have always represented overtime rates to be paid to employees working under the H-2B Visa program in applying for foreign labor.

17. Defendants have never identified that workers would not receive overtime compensation in applying for foreign labor. *(See, **Exhibit 10**, 19:3 - 23:18; **Exhibit 4**, Bates Nos. EPIC011816-015851).*

18. In fact, in 2020, the United States Department of Labor investigated and subsequently found that Defendants "failed to pay the offered wage rate for overtime hours worked" for the calendar years 2018-19.  *(See, **Exhibit 12**, Bates Nos. A013974-97 at \*A013796).*

19. Accordingly, the Department of Labor fined Defendants in the amount of $901,201.84 because: 1) [Defendants] substantially failed to comply with obligation to pay the promised wage and the employer failed to pay the wage listed on the I-129 Petition or 9142B Application; 2) [Defendants] substantially failed to comply with the requirement to pay the inbound transportation & subsistence costs; and 3) [Defendants] substantially failed to comply with the requirement to pay the outbound transportation & subsistence costs. *(See, **Exhibit 12**, Bates Nos. A013974-97).*

20. Hourly laborers are regularly engaged in difficult, very hard and long work. (*See, **Exhibit 6**, Deposition of Lonny Ryburn, 62:9-11).*

21. Plaintiffs regularly work in excess of 40 hours per week. *Id.*

22. Jose Gonzalez Gomez is a current employee of Epic Landscape Productions. *(See, **Exhibit 1**, Deposition of Jose Gonzalez Gomez, 32:10-14*).

23. Jesus Salvador Hernandez-Devora came to Kansas City from Galeana, Nuevo Le'on Mexico in 2018. *(See, **Exhibit 13**, New Employee Information, Bates No. Epic A009002).*

24. Upon arrival, Mr. Hernandez-Devora began working for Epic. *Id.*

25. Mr. Hernandez-Devora did not receive premium pay when he worked over 40 hours in a workweek. *(See, **Exhibit 14**, Bates Nos. A000707-751 Pay records for Hernandez-Devora).*

## III.    ARGUMENT

Plaintiffs respectfully move this Court for an Order granting class certification in this case under Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of the following class:

> All persons who worked for Defendants as hourly laborers in Kansas and Missouri from May 30, 2017 to July 2021, and who performed overtime work for the Defendant for more than 40 hours in workweek without overtime compensation;

Plaintiffs respectfully request that the Court divide the class into the following subclasses:

A.    H-2B workers who did not receive overtime compensation after having worked more than 40 hours in a workweek;

B.    Non H-2B workers who did not receive overtime compensation after having worked more than 40 hours in a workweek;

C.    Missouri H-2B workers who did not receive overtime compensation after having worked more than 40 hours in a workweek; and

D.    Non H-2B workers who did not receive overtime compensation after having worked more than 40 hours in a workweek.

Because this matter meets all of the requirements of the Federal Rules of Civil Procedure governing class actions, the Court should certify the Class.  *See* Fed. R. Civ. P. 23.

## A.  APPLICABLE STANDARD OF REVIEW

The limited nature of this Motion circumscribes the scope of the Court's present inquiry. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974).  "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Id.*  "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the

individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)).

Although a court may look behind the pleadings to decide a motion for class certification, "the court must look only so far as to determine whether, given the factual setting of the case, if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005). If … the same evidence will suffice for each member to make out a prima facie case, then it is a common question. *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 634 (D. Kan. 2008)   However, the "interests of justice require that when in doubt, any error, if there is to be one, should be committed in favor of allowing the class action." *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 207 (W.D. Mo. 2006).

1. **Plaintiffs have sufficiently demonstrated that at all times, Defendants represented that they would pay overtime premiums.**

Plaintiffs have presented to this Court unequivocal evidence that at all relevant times, Defendants represented to the Government, through its H2B application process, and separately, through advertisements to prospective employees, that it would pay overtime premiums for hours worked in excess of 40 in a workweek, and yet, until July 2021, did not pay overtime premiums to any of its Laborers. As set forth throughout this document, the representations to the US Government that Defendants made, combined with their wholesale failure to so pay, create a breach of contract between Defendants and its nearly 900 Laborers that it has identified.

2. **Plaintiffs have sufficiently established a common practice by Defendants of failing and refusing to compensate Hourly Laborers one- and one-half times their regular rate of pay for work in excess of 40 hours in a workweek.**

Plaintiffs comprise a group of current and former hourly Laborers who regularly worked more than 40 hours per week and were (incorrectly) classified as exempt employees under the Fair Labor Standards Act.

Defendants violated state common law through contractual agreements with the H-2B laborers, and through direct advertisements for recruitment of laborers from the Kansas City area and Puerto Rico.

Defendants use an in-house payroll department to manage payroll for their employees, including Laborers.

Defendants maintain a standardized job description for its Laborers, which is a basic list of a Laborer job function. In each location in which it advertises for potential Laborers, Defendants' job advertisement describes the position identically, and states that Laborers will be paid time and a half for any overtime hours. Generally speaking, Laborers' job responsibilities entail lawn maintenance, landscape, and general labor.

Each year Defendants seek temporary foreign workers, they are required to apply to recruit those workers under the H2B visa program. The H2B visa program is a program that allows American companies, such as Defendants, to temporarily hire nonimmigrants to perform nonagricultural labor or services in the United States. The employment must be of a temporary nature for a limited period of time such as a one-time occurrence, seasonal need, peak load need or intermittent need. The H-2B program requires the employer to attest to the Department of Labor that it will offer a wage that equals or exceeds the highest of the prevailing wage, applicable Federal minimum wage, the State minimum wage, or local minimum wage to the H-2B nonimmigrant worker for the occupation in the area of intended employment during the entire period of the approved H-2B labor certification. The H-2B program also establishes certain

recruitment and displacement standards in order to protect similarly employed U.S. workers. https://www.uscis.gov/working-in-the-united-states/temporary-workers/h-2b-temporary-non-agricultural-workers (last visited 12/6/2023).

## B.    THE PROPOSED CLASS SHOULD BE CERTIFIED

### 1.    Plaintiffs' Claims are Particularly Appropriate for Certification Under Rule 23.

The Supreme Court has noted that "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). A class action is "peculiarly appropriate" when a case raises legal issues "common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)). For in such cases, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Id*.

The court's "rigorous analysis" "[f]requently . . . will entail some overlap with the merits of the plaintiff's underlying claim." *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, No. MDL No: 2785, 2020 U.S. Dist. LEXIS 40789, at *44 (D. Kan. Feb. 27, 2020) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 352, 131 S. Ct. 2541 (2011)). But the careful examination and rigorous analysis requirements do not authorize mini-trials to determine whether the class, if certified, actually could prevail on the merits of their claims. *Id.* (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013); *Dukes*, 564 U.S. at 351 n.6.)

"Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 568 U.S. at 466. Rather, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id. See also In Re Epipen Sales Practices and Antitrust Litigation,* Case No. 2:17-md-02785-DDC-TJJ, Doc. No. 2018-1 (D. Kan., Feb 27, 2020) ("[T]he careful examination and rigorous analysis requirements do not authorize mini-trials to determine whether the class, if certified, actually could prevail on the merits of their claims.") *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013); *Dukes*, 564 U.S. at 351 n.6.) "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 568 U.S. at 466. Rather, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.")  The Court conducts only a preliminary inquiry beyond the pleadings to ascertain if "common evidence could suffice to make out a prima facie case for the class." *Id.*  "The interests of justice require that when in doubt, any error, if there is to be one, should be committed in favor of allowing the class action." *In re Aquila ERISA Litigation,* 237 F.R.D. 202, 207 (W.D. Mo. 2006).

A motion for class certification involves a two-part analysis.  First, the Court asks whether the requirements of Rule 23(a) are satisfied; and then, second, whether the proposed class fits into one of the three categories identified in Rule 23(b). *Janson,* 2010 WL 5105146, at *2.  Rule 23(a) sets out four requirements:

(1)    the class is so numerous that joinder of all members is impracticable;

(2)    there are questions of law or fact common to the class;

(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)    the representative parties will fairly and adequately protect the interests of the class.

*Id.*

Rule 23(b) posits three alternative requirements, any one of which, in conjunction with Rule 23(a), can justify certification. Here, Plaintiffs move for certification under Rule 23(b)(3): "a class should be certified if 'the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* (quoting Fed. R. Civ. P. 23(b)(3)).

This Court should find that Defendants' violations of Missouri statutory and Missouri and Kansas Common law raise questions that should properly be addressed through a class action. The legal and factual issues surrounding Defendants' failure to properly compensate Plaintiffs and members of the Class are simple, straightforward, and uniform, and thus have supported class action certification in United States District Courts across the country, including the United States District Court for the District of Kansas. See, e.g., *Garcia v. Tyson Foods, Inc.*, 766 F. Supp. 2d 1167, 1172 (D. Kan. 2011); *Nobles v. State Farm Mut. Auto. Ins. Co.,* 2:10-CV-04175-NKL, 2011 WL 3794021 (W.D. Mo. Aug. 25, 2011) **modified on reconsideration,** 2:10-CV-04175-NKL, 2011 WL 5563444 (W.D. Mo. Nov. 15, 2011); *Petrone v. Werner Enters., Inc.*, 2015 WL 4772830, at *2 (D. Neb. Aug. 12, 2015) (certifying Rule 23 class and denying motion for decertification of FLSA collective action because defendants' policy of not compensating certain student drivers for certain activities (breaks fewer than 20 minutes and sleeping periods in excess of eight hours) was common to all class members and common issues predominated over individual issues); *Paunovic v. OBI Seafoods LLC*, No. C21-884 MJP, 2022 U.S. Dist. LEXIS 163162, at *29 (W.D. Wash. Sep. 9, 2022) (certifying an H-2B class and finding that a "single class action is a superior means to vindicate the claims Plaintiffs present").

## 2.  The Requirements of Rule 23(a) Are Satisfied

"The elements of the class certification standard are (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation, plus one of the requirements established by Rule 23(b)(1), (b)(2), or (b)(3). *See* Fed. R. Civ. P. 23(a)-(b)." *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, No. MDL No: 2785, 2020 U.S. Dist. LEXIS 40789, at *43 (D. Kan. Feb. 27, 2020).

As more fully set forth below, this case, and each subclass, satisfies each requirement.

### a.  The Class Satisfies the "Numerosity" Requirement of Rule 23(a)(1).

To be certified, a proposed class must be so "numerous that joinder of all members is impracticable. *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, No. MDL No: 2785, 2020 U.S. Dist. LEXIS 40789, at *60 (D. Kan. Feb. 27, 2020).  There are no "arbitrary rules" dictating the number of class members necessary to satisfy numerosity.  *Id.*  (citations omitted).  The numerosity requirement rule does not contain any explicit numerical limitations and it is permissible to estimate class size. *Bradford v. Agco Corp.*, 187 F.R.D. 600, 604 (W.D. Mo. 1999); *see* also, *In Re Epipen Sales Practices and Antitrust Litigation,* Case No. 2:17-md-02785-DDC-TJJ, Doc. No. 2018-1 at *28, N. 17 D. Kan., Feb 27, 2020) ("1 William B. Rubenstein, Newberg on Class Actions § 3:12 (5th ed. 2013) (suggesting that a class of 40 or more members should presumptively satisfy numerosity)." A "good faith estimate of at least 50 members is a sufficient size to maintain a class action." *Rex v. Owens*, 585 F.2d 432, 436 (10th Cir. 1978); *In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 613 (D. Kan. 1995).[2]

Here, Defendants have identified at least 830 current and former hourly laborers, who performed work for Defendants and who also worked in Kansas and Missouri. Each of these

---

[2] See also William B. Rubenstein, *Newberg on Class Actions* § 3:12 (5th ed. 2013) (suggesting that a class of 40 or more members should presumptively satisfy numerosity).

employees was paid pursuant to Defendant' policies and practices of failing to pay them premiums for hours worked in excess of 40 in a workweek. Therefore, the number of Landscape Laborers working for Defendants meets the numerosity requirement.

### b.    The class is sufficiently ascertainable within the law of this District.

This District has adopted the 7th Circuit's "weak" version of ascertainability as a requisite to class certification set forth in *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). *In re Syngenta AG Mir 162 Corn Litig.*, No. MDL No. 2591, 2016 U.S. Dist. LEXIS 132549, at *1359 (D. Kan. Sep. 26, 2016). In determining ascertainability, "the class definition must not be too vague, the class must not be defined by subjective criteria, and the class must not be defined in terms of success on the merits." *Id.* at 1360.

Here, the class is readily ascertainable. All records are from the Defendants about their current and former employees, and their applications to hire foreign workers. The class members are identifiable on an individual basis, and the pay records at issue are available individually. In other words, each class member who is alleged to have been damaged by Defendants' unlawful practices are readily ascertainable, as well as the amount that they have allegedly lost.

### c.    Plaintiffs Satisfy the "Commonality" Requirement of Rule 23(a)(2).

Next, Rule 23 requires a court to find that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)); *Garcia v. Tyson Foods, Inc.*, 255 F.R.D. 678, 688 (D. Kan. 2009) (Lungstrum, J.) (certifying claim for unpaid wages under quantum meruit theory).

14

"The interests and claims of the named plaintiff and class members need not be identical to satisfy typicality; so long as the claims of the named plaintiff and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *In Re Epipen Sales Practics and Antitrust Litigation,* Case No. 2:17-md-02785-DDC-TJJ, Doc. No. 2018-1 at *28, N. 17 D. Kan., Feb 27, 2020) ("1 William B. Rubenstein, Newberg on Class Actions § 3:12 (5th ed. 2013), quoting *Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 610 (D. Kan. 2014).

To decide whether a plaintiff can satisfy the predominance requirement, a court must first "characterize the issues in the case as common or not, and then weigh which issues predominate." *Id*. Critically, so long as at least one common issue predominates, a plaintiff can satisfy Rule 23(b)(3)—even if individual issues (such as damages) remain and require the court to try them separately. *In Re Epipen Sales Practics and Antitrust Litigation,* Case No. 2:17-md-02785-DDC-TJJ, Doc. No. 2018-1 at *46, (D. Kan., Feb 27, 2020), quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).  In this case, the Plaintiffs and the putative class share not only common, but virtually *identical* questions of law and fact, namely:

(1)    whether Defendants have violated Kansas and Missouri law in failing to properly compensate their Laborers for overtime hours;

(2)    whether Plaintiffs and members of the Class have a similar interest for challenging Defendants' acts and conduct; and

(3)    whether Defendants, in their H-2B applications, stated that workers would receive overtime compensation;

(4)    whether non H-2B Laborers are entitled to receive the same overtime compensation promised to the H-2B Laborers in the H-2B applications;

(5)    whether Plaintiffs, despite that representation, did not receive overtime compensation until July 2021; and

(6)    the extent of damages.

Plaintiffs have identified a number of questions with common answers that "would 'resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 916 (10th Cir. 2018).  "In the context of an alleged overtime violation, that violation is plausible regardless of what any particular plaintiff earned as an hourly wage (and regardless of when, how often and how much a particular plaintiff was required to work in excess of 40 hours per week without compensation) so long as the plaintiff was otherwise eligible to receive overtime compensation and worked more than 40 hours in a given week without receiving compensation for those overtime hours." *In re Bank of Am. Wage & Hour Employment Litig.*, 10-MD-2138-JWL, 2010 WL 4180567 (D. Kan. Oct. 20, 2010).

 Plaintiffs have alleged, and provided ample support for the allegation that, based upon Defendants' documents that demonstrate that common H-2B applications represented that workers would be paid overtime, under Kansas and Missouri law, the common failure to pay overtime compensation, despite representations to the Federal Government that they would, and that they were paid straight time compensation for all hours worked, regardless of whether they exceeded 40 hours in a workweek. The commonality requirement of Rule 23(a) has been satisfied.

### d.    Plaintiffs Satisfy the "Typicality" Requirement of Rule 23(a)(3).

Rule 23(a)(3) requires that proposed class representatives present claims "typical" of other class members – in other words, class representatives should have the same interests and seek a remedy for the same injuries as other class members.  *See E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977).  The typicality element requires a finding that the claims of representative plaintiffs are typical of the claims of the proposed class. Fed. R. Civ. P. 23(a)(3).

But, the named plaintiffs' interests and claims "need not be identical" to those of the putative class members. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010). As long as the claims of the named plaintiff and class members "are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *Id*. at 1198–99; *see also Menocal v. GEO Grp., Inc*., 882 F.3d 905, 914 (10th Cir. 2018) (same). The typicality requirement is "fairly easily met so long as other class members have claims similar to the named plaintiffs." *DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171, 1174 (8th Cir. Minn. 1995).

Plaintiffs' claims against Defendants are not typical, but rather *identical*, to those of the Class. Plaintiffs assert that Defendants violated Kansas and Missouri law by failing to pay them for overtime compensation in breach of contract with them through the H-2B visa program with respect to foreign labor, and unjust enrichment for its U.S. workforce. Plaintiffs seek precisely the same damages that each member of the Class would likewise seek. Typicality is established where, as here, both Plaintiffs and each member of the Class were subjected to the same unlawful conduct and their basis for recovery is premised on the same legal theory and statutory provisions. Again, this Court has had no trouble finding typicality in cases for unpaid wages. *See e.g., Garcia v. Tyson Foods, Inc.*, 255 F.R.D. 678, 688 (D. Kan. 2009) (Lungstrum, J.). Thus, the typicality requirement is satisfied.

> **e.    The Representative Parties Will Fairly and Adequately Protect the Interests of the Class as Required by Rule 23(a)(4).**

A certified class must have representative parties who will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The adequacy requirement asks whether the named plaintiffs and counsel (a) "have any conflicts of interest with other class members" and (b) will prosecute the action vigorously on behalf of the class. *In re Motor Fuel Temperature Sales*

*Practices Litig.*, 292 F.R.D. 652, 671 (D. Kan. 2013) (citing *E. Tex. Motor Freight Sys.*, *Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (further citations omitted)). "Minor conflicts among class members do not defeat certification[.]" *Id.* Only a "fundamental conflict" about the specific issues in controversy will prevent a named plaintiff from representing the interests of the class adequately. *Id.* A fundamental conflict exists where some class members claim an injury resulting from conduct that benefited other class members. *Id.* Defeating "[the] adequacy requirement of Rule 23" requires a conflict that is "more than merely speculative or hypothetical." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003) (citation and internal quotation marks omitted).

Both representative Plaintiffs meet both elements of the test.  First, they have no interest that is antagonistic to, or conflicts with, the interests of the Class.  To the contrary, Plaintiffs' interests are coextensive to those of the proposed Class members in establishing that Defendants violated Missouri statutory and Kansas and Missouri Common law regarding employment compensation. *Nobles v. State Farm Mut. Auto. Ins. Co.,* 2:10-CV-04175-NKL, 2011 WL 3794021 (W.D. Mo. Aug. 25, 2011) **modified on reconsideration,** 2:10-CV-04175-NKL, 2011 WL 5563444 (W.D. Mo. Nov. 15, 2011) (adequacy established where "Plaintiff's interests are co-extensive to those of the proposed class members in establishing that Defendant violated Missouri state and common law regarding employment compensation.").  Given the identical nature of the claims between Plaintiffs and the Class, there is simply no potential for conflicting interests in this action.  Moreover, Plaintiffs are ready, willing, and able to fulfill the duties required of the Class representatives, and Plaintiff Gomez is already serving as the collective action representative under claims certified pursuant to the Fair Labor Standards Act. (ECF Doc. No. 76).

Second, Plaintiffs have retained qualified and experienced attorneys who are competent in class action litigation, specifically including wage and hour litigation.   Plaintiffs' chosen counsel have prosecuted numerous wage claims on behalf of thousands of individuals and, as Class counsel, will continue to vigorously prosecute this action on behalf of the named Plaintiffs and the Class as a whole.  Plaintiffs and their counsel will adequately represent and protect the interests of the Class.  Thus, the adequacy requirements of Rule 23(a)(4) are met.

### 3.   The Requirements of Rule 23(b)(3) Are Also Satisfied

In addition to the class certification requirements set forth in Rule 23(a), a proposed class must satisfy one of the three alternative requirements of Rule 23(b).  Fed. R. Civ. P. 23(b).  Plaintiff seeks certification pursuant to Rule 23(b)(3), which authorizes certification when:

> The court finds that the questions of law or fact common to the members of the class predominate over any questions or law affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).  As set forth below, this action satisfies both conditions.

### a.    Common Questions Predominate.

Rule 23(b)(3) also requires a plaintiff to "show that common questions subject to generalized, classwide proof predominate over individual questions." *CGC Holding Co. v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014). This requirement does not mean a plaintiff must show "that all of the elements of the claim entail questions of fact and law that are common to the class" or "that the answers to those common questions [are] dispositive" of the claim. *Id* (citation omitted). Instead, the predominance inquiry "'asks whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating,

individual issues.'" *Id*.  "The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual."  *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005) (citations omitted).  The predominance requirement is satisfied if "there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine such class member's individual position."  *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995).  Critically, so long as at least one common issue predominates, a plaintiff can satisfy Rule 23(b)(3)—even if individual issues (such as damages) remain and require the court to try them separately. *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, No. MDL No: 2785, 2020 U.S. Dist. LEXIS 40789 (D. Kan. Feb. 27, 2020) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)).

Here, common questions of law and fact predominate.  Plaintiffs and the putative Class members share two common and essential links: whether Defendants' uniform pay practices violated Kansas and Missouri law.  The critical issues in this case all revolve around evidence concerning Defendants' own conduct and liability – issues raising common questions of law and fact.  Further, whether or not certain alleged affirmative defenses apply in this case is also a common question which predominates as to all class members.  *See Craft v. Philip Morris Companies, Inc.*, 190 S.W.3d 368, 383 (Mo. App. E.D. 2005); *see also Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 39 (1st Cir. 2003).  Other courts within this district who have decided class certification issues in cases involving improperly paid wages have found that common questions of law or fact predominate as required by Rule 23(b)(3).  *See, e.g.*, *Garcia v. Tyson Foods, Inc.*, 255 F.R.D. 678, 688 (D. Kan. 2009). The predominance requirement of Rule 23(b)(3) is satisfied.

### b.    A Class Action is "Superior" To Other Means of Adjudication.

Rule 23(b)(3) also requires that class resolution be "superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) lists four factors relevant to the superiority analysis:

    (a)    the interest of members of the class in individually controlling the prosecution or defense of separate actions;

    (b)    the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

    (c)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and]

    (d)    the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).  The factors presently before the Court strongly weigh in favor of class certification.

"It is enough that class treatment is superior because it will 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *CGC Holding Co. v. Broad & Cassel*, 773 F.3d 1076, 1096 (10th Cir. 2014) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). "The scale of this case, the desirability for uniformity of decision, and the continued economies of time, effort, and expense all support a finding that class treatment is the superior method to decide this dispute fairly and efficiently." *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, No. MDL No: 2785, 2020 U.S. Dist. LEXIS 40789, at *84 (D. Kan. Feb. 27, 2020).

Another principal concern regarding "superiority" is whether, in the absence of a class action, members of the class could be deprived of any legal redress, because their claims are

relatively modest compared to the cost of the litigation.  *Phillips Petroleum Co. v. Shutts*, 472 U.S.

797 (1985).  Courts have recognized this concern and endorsed class certification where:

> [T]he proposed class consists of people who, because of the size of their claims, would be without effective strength to bring their opponents into court at all.  The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).  The utility of, and necessity for,

class action treatment in this case is self-evident.  Damages allowed by Kansas and Missouri law

for unpaid wages are simply too slight to support individual suits.  *See Redmon v. Uncle Julio's of

Ill., Inc*, 2008 WL 656075, at *5 (N.D. Ill Mar. 7, 2008) (Rule 23(b)(3) superiority recognized

properly "where potential damages may be too insignificant to pursue a claim individually.")

(citations omitted).  Thus, class action treatment of this case clearly provides the best method

available for adjudication of the claims of Class members.

Resolving Laborers' claims on a class-wide basis in a single forum will be efficient and

cost-effective.  *See Bird Hotel Corp. v. Super 8 Motels, Inc.*, 246 F.R.D. 603, 608 (D.S.D. 2007).

To resolve Plaintiff's and the putative class's claims on such a basis would prevent wasteful and

expensive redundancy of litigation efforts by both multiple Plaintiffs and Defendants.  *Troy v. Red

Lantern Inn, Inc.*, 2007 WL 4293014, at *5 (N.D. Ill Dec. 4, 2007) (noting that class certification

will save the court, plaintiffs and Defendant the time and expense of separately trying multiple

claims); *see also Halperin v. Interpark, Inc.*, No. 07-CV-2161, 2007 WL 4219419, at *4 (N.D. Ill.

Nov. 29, 2007) ("[A]llowing the present class to proceed would be an efficient use of judicial

resources, and would be superior to individual adjudication of the class members' claims.").

Finally, there are no manageability issues that would preclude certification. *See Redmon*, 2008 WL 656075, at *5 ("[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative … to no litigation at all."); *Nobles v. State Farm Mut. Auto. Ins. Co.*, 2:10-CV-04175-NKL, 2011 WL 3794021 (W.D. Mo. Aug. 25, 2011). modified on reconsideration, 2:10-CV-04175-NKL, 2011 WL 5563444 (W.D. Mo. Nov. 15, 2011). Indeed, a large class size "is no argument at all" against certification. *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660-61 (7th Cir. 2004).

### 4. Class Counsel Should Be Approved Pursuant to Rule 23(g).

Rule 23(g) sets forth the standards for appointing class counsel. Rule 23(g) mandates that class counsel "fairly and adequately represent the interests of the class." *In re Aquila ERISA Litig.*, 237 F.R.D. at 213. In making this determination, courts must evaluate the following:

> [T]he work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions and other complex litigation and claims of the type asserted in the present action, counsel's knowledge in the applicable law, and the resources counsel will commit to representing the class.

*Id.* at 213-14; Fed. R. Civ. P. 23(g). In addition to the factors above, the Court may consider other factors it deems relevant to evaluating counsel's adequacy. Fed. R. Civ. P. 23(g).

Plaintiffs' counsel has performed extensive research and investigation in filing and litigating the instant claims, and has actively litigated this case since its inception. Further, The Hodgson Law Firm is handling multiple class actions asserting analogous violations of Kansas and Missouri law, and is constantly monitoring the jurisprudential landscape of these relatively new actions. In addition to serving as collective class counsel in this matter for Plaintiffs and the FLSA Opt-Ins, Plaintiffs' counsel has been repeatedly appointed as class counsel in similar employment actions. See, *e.g.*, *Gutierrez v. The Big Biscuit Company, Case No. 2:2019-cv-02527 (D.KAN);*

*Nolen v. Firebirds of Overland Park, Case. No. 2:2017-cv-02237 (D.KAN); Pinkston v. Wheatland Enterprises, Case No. 2:2011-cv-02498 (D.KAN); Greenstein v. Meredith Corporation, Case No. 2:2011-cv-02399 (D.KAN).* Plaintiff's counsel is ready and willing to provide more information on their qualifications, if the Court so desires.

## IV.    CONCLUSION

The evidence presented to this Court unequivocally demonstrates that Defendants have a common practice and policy of failing to pay its Laborers overtime compensation for all hours worked in excess of 40 in a workweek. Defendants uniformly classified its employees as exempt from overtime compensation. Plaintiffs have alleged that this uniform misclassification is violative of Kansas and Missouri law requirement for compensation of employees.

Accordingly, Plaintiffs respectfully move this Court pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(3), and 23(g) for entry of an Order:

1.    Certifying this action as a class action on behalf of the following classes:

A:    H-2B workers who did not receive overtime compensation after having worked more than 40 hours in a workweek;

B:    Non H-2B workers who did not receive overtime compensation after having worked more than 40 hours in a workweek;

C:    Missouri H-2B workers who did not receive overtime compensation after having worked more than 40 hours in a workweek; and

D:    Missouri non H-2B workers who did not receive overtime compensation after having worked more than 40 hours in a workweek.

2.      Certifying and appointing Jose Gonzalez Gomez as Class representative for the class seeking relief under Unjust Enrichment claims because of his citizenship as a U.S. Citizen;

3.      Certifying and appointing Plaintiff Jesus Salvador Hernandez-Devora as Class representative for the class seeking relief under Breach of Contract because of his status as an H-2B worker;

4.      Certifying and appointing Plaintiff Jesus Salvador Hernandez-Devora as Class representative for the class seeking relief under Missouri Minimum Wage and Maximum Hours Laws for the work he performed as a Missouri Laborer;

3.      Designating and appointing Plaintiff's counsel of record, the Hodgson Law Firm LLC and Bertram & Graf, LLC.

4.      Granting such other and further relief as the Court may deem just and proper.

Dated: December __, 2023.

Respectfully submitted,


Respectfully submitted,

**THE HODGSON LAW FIRM, LLC**

/s/ Michael Hodgson
Michael Hodgson KS Bar No. 21331
3609 SW Pryor Rd.
Lee's Summit, Missouri 64082
(p) 816.600.0117
(f) 816.600.0137
mike@thehodgsonlawfirm.com


**BERTRAM & GRAF, L.L.C.**

By: */s/ Timothy R. West*
      Timothy R. West, KS Bar #23892

25

2345 Grand Boulevard, Suite 1925
Kansas City, Missouri 64108
Telephone:  (816) 523-2205
Facsimile:  (816) 523-8258
Email:  tim@bertramgraf.com

***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December __, 2023, the foregoing document was electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of such filing to the following:

Eric W. Barth
**HINKLE LAW FIRM LLC**
1617 North Waterfront Parkway, Suite 400
Wichita, Kansas 67206
E-mail: ebarth@hinklaw.com

ALAN RUPE

**ATTORNEYS FOR DEFENDANTS**

By: *<u>/s/ Michael Hodgson</u>*
Attorney for Plaintiffs

27