IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOSE GONZALEZ GOMEZ, et al., on behalf of themselves and others similarly situated, | |
| Plaintiffs, | Case No. 22-2198-JAR-ADM |
| v. | |
| EPIC LANDSCAPE PRODUCTIONS, L.C., et al., | |
| Defendants. | |

**MEMORANDUM AND ORDER**

Plaintiffs bring this purported class and collective action under the Fair Labor Standards Act ("FLSA") and related wage laws, alleging defendants Epic Landscape Productions, L.C., Epic Landscape Productions, Inc., John Constant, and Marty Siler (collectively, "Epic") willfully failed to pay them overtime compensation. This matter is now before the court on Plaintiffs' Motion to Compel. (ECF 185.) By way of the motion, plaintiffs ask the court to order Epic to produce payroll records for putative class members. Epic asserts that the documents are not relevant to claims in this case unless and until the court certifies a class, and even then, that the document request is too broad. For the reasons explained below, the motion is granted in part and denied in part.

**I.   BACKGROUND**

Plaintiffs are current and former landscape laborers whom Epic employed as hourly employees. They allege that Epic refused to pay them overtime compensation when they worked more than 40 hours in a workweek. According to plaintiffs, Epic's policy and practice was to pay

its landscape laborers a straight-time hourly rate, without paying a time-and-one-half rate for overtime hours.

On May 30, 2022, plaintiffs filed this action, asserting five claims. In Count I, plaintiffs allege that Epic violated the FLSA, 29 U.S.C. § 207, by failing to appropriately compensate laborers for overtime work. They bring Count I as an opt-in collective action. Plaintiffs bring the remaining claims as purported class claims under Federal Rule of Civil Procedure 23. In Count II, plaintiffs allege that Epic violated the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. § 290.500, for failing to pay Missouri employees overtime wages. In Count III, plaintiffs allege that Epic breached its contracts with H-2B workers[1] by agreeing to, but failing to, pay them overtime wages. In Count IV, plaintiffs allege that Epic's U.S. workers are third-party beneficiaries to Epic's contracts with H-2B workers,[2] and that Epic breached contracts with U.S. workers by failing to provide overtime wages. Finally, in Count V, plaintiffs allege that Epic was unjustly enriched by improperly retaining money that should have been paid to the non-H-2B workers in the form of overtime wages. (ECF 69.)

On November 10, 2022, the court entered a Phase I Scheduling Order to govern the initial stage of discovery, which was focused on discovery related to conditional certification as an FLSA collective action. (ECF 36.) Plaintiffs served Epic with their First Request for Production of Documents ("RFP"), which included RFP 4. RFP 4 sought:

> For the Relevant Period Epic Landscape Productions, produce each Payroll Record for the Employees of Epic Landscape Productions, L.C., and any summaries held

---

[1] An H-2B worker is a nonimmigrant alien who has "a residence in a foreign country which he has no intention of abandoning who is coming temporarily to the United States to perform ... temporary [nonagricultural] service or labor." 8 U.S.C. § 1101(a)(15)(H)(ii)(b).

[2] 29 C.F.R. § 503.16(q) requires employers to provide U.S. workers the same benefits, wages, and working conditions as H-2B workers.

2

electronically in accounting or payroll software, including but not limited to QuickBooks.

(ECF 185-1, at 11.)  Epic objected on a number of grounds, including that the RFP was premature. But on November 28, 2022, Epic produced pay records for individuals who had consented to join the litigation by that date.

On April 28, 2023, the court conditionally certified the case as an FLSA collective action for Count I.  (ECF 76.)  The court defined the conditional class as: "All current and former lawn and landscape workers, who worked for the defendants at any time from April 28, 2020 through the date the Court grants conditional certification." (*Id*. at 12.)  Thereafter, the court set a 45-day deadline for putative class members to opt-in to the action.  (ECF 83.)

On September 21, 2023, after consultation with the parties, the court entered a Phase II Scheduling Order.  (ECF 132.)  Based on the proposed order the parties submitted, the Phase II Scheduling Order set all remaining pre-trial deadlines, including a June 3, 2024 deadline for *all* discovery.

Plaintiffs then asked defendants to supplement their payroll production for plaintiffs who had opted-in since Epic's last production.  Epic initially refused, but during a December 6, 2023 discovery status conference, changed course and agreed.  (ECF 143.)  Epic produced pay records for the remaining opt-in plaintiffs.

On December 22, 2023, plaintiffs filed their motion for Rule 23 class certification of their claims asserted in Counts II-V.  (ECF 147.)  Plaintiffs sought certification of the following class:

> All persons who worked for Defendants as hourly laborers in Kansas and Missouri from May 30, 2017 to July 2021, and who performed overtime work for the Defendant for more than 40 hours in workweek without overtime compensation.

(*Id*. at 12.)  On January 11, 2024, plaintiffs asked Epic to supplement its payroll production with records for the putative Rule 23 plaintiffs who had not joined the FLSA collective action.  Epic

3

refused the request, stating that pre-certification discovery should be limited to certification issues. At the parties' request, the court convened another discovery conference on February 1, to discuss the pay-records issue. (ECF 163.) The court gave the parties guidance as to the potential relevance, even pre-certification, of the requested documents. The court encouraged the parties to continue the meet-and-confer process, but gave plaintiffs leave to file a motion to compel the data should the parties be unable to reach agreement.

On March 15, Epic produced pay records for more than 150 members of the putative class. However, Epic withheld the records of certain categories of employees. Specifically, Epic withheld pay records for:

- Workers who served as foremen and/or drivers during the relevant period,

- Workers who received money from a Department of Labor ("DOL") settlement with Epic, and

- Workers whose job titles indicate they would not meet the putative class definition because, for example, they were paid a salary or were already paid overtime wages.

(ECF 185, at 5.) Plaintiffs now move to compel the pay records of these three categories of workers.[3]

---

[3] Plaintiffs' motion mentions that Epic also withheld the pay records of "Workers who participated in the Albelo lawsuit," but the motion does not further address that category of documents or move to compel such documents. (ECF 185, at 4 (referencing *Albelo v. Epic Landscape Productions, L.C.*, Western District of Missouri Case No 4:17-CV-0454-DGK).) Other than noting the omission, Epic's response brief did not address such documents. (ECF 189.) Plaintiffs' reply brief then addresses the "*Albelo* plaintiffs." (ECF 192, at 4.) The court finds, however that plaintiffs waived their argument with respect to such workers' pay records by not raising it in their opening brief. *See Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003) (holding argument raised for the first time in reply brief was waived).

4

## II.     LEGAL STANDARDS

Parties may conduct "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  FED. R. CIV. P. 26(b)(1).  At the discovery stage, relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227-JWL-TJJ, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) ("[A]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case will be deemed relevant.").  Relevance is often apparent on the face of the discovery request.  *See Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 652–53 (D. Kan. 2006).

When the discovery sought appears relevant on its face, or the discovering party has established relevance, the party resisting discovery bears the burden to support its objections to production.  *See Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014) (ruling the party resisting discovery bears the burden to show why a discovery request is improper); *Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, No. 08-1250-MLB-KGG, 2012 WL 1080801, at *3 (D. Kan. Mar. 29, 2012) ("Once this low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request.").  The party resisting discovery does not carry this burden by asserting "conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad." *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004).  Rather, an objecting party "must specifically show in its response to the motion to compel, despite the broad and liberal

5

construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *Id*. at 670-71.

## III.   ANALYSIS

Epic objects to providing pay records for workers in the three categories at issue by asserting (1) all merits-related discovery is premature until the court certifies a Rule 23 class and (2) discovery related to these three categories of workers is not relevant to any claim or defense in the case.  The court will address each argument in turn.

### A.  Discovery Timing

First, Epic argues that "pre-certification discovery should be limited to certification issues." (ECF 189, at 3.)  According to Epic, because the "real value in [the pay] records lies in their relevance to damage calculations—which is a merits issue, not a Rule 23 issue . . . discovery of [putative class] payroll records is premature." (*Id.* at 4.)  The court disagrees.

The decision to bifurcate merits and class-certification discovery, or to schedule the discovery to occur concurrently, is within the court's sound discretion.  *See Smith v. Lifevantage Corp.*, No. 18-cv-0621-DBB-PMW, 2020 WL 1891886, at *2 (D. Utah Apr. 16, 2020); *Infinity Home Collection v. Coleman*, No. 17-mc-00200-MSK-MEH, 2018 WL 1733262, at *2 (D. Colo. Apr. 10, 2018) (quoting *Tracy v. Dean Witter Reynolds, Inc.,* 185 F.R.D. 303, 304–05 (D. Colo. 1998)); *In re Semgroup Energy Partners, L.P., Sec. Litig*., No. 08-MD-1989-GKF-FHM, 2010 WL 5376262, at *2 (N.D. Okla. Dec. 21, 2010).  "[T]here is no bright-line rule" that plaintiffs cannot conduct merits discovery prior to the court's certification of a class.  *In re Bank of Am. Wage & Hour Emp. Pracs. Litig*., 275 F.R.D. 534, 541 (D. Kan. 2011).  "This is particularly true when the burden imposed on the responding party is minimal."  *Id.*  Where there is no indication that responding to discovery sought would impose an undue burden, courts often exercise their

discretion to permit the discovery to occur concurrently. *See, e.g., id.* (holding "there is no compelling reason to limit the discovery sought").

Here, defendants did not request that the court bifurcate class-certification discovery from merits discovery in setting the "remaining case-management deadlines" in the Phase II Scheduling Order. Indeed, the parties' proposed scheduling order, submitted to the court prior to the September 21, 2023 scheduling conference, contained no suggestion of bifurcation. The Phase II Scheduling Order ultimately entered did not bifurcate discovery. Rather, it set an overall discovery deadline of June 3. (ECF 132.) In other words, there is one discovery deadline governing this litigation, and that deadline could easily pass before the court issues a decision on plaintiffs' motion for class certification. Now is the time for the parties to complete discovery. Epic has not moved for modification of the scheduling order or for bifurcation, and the court will not now consider bifurcation under the guise of sustaining Epic's discovery objections. Nor will the court jeopardize the current case schedule by postponing the production of the requested pay records until after a ruling on class certification.

In addition, Epic has not established that producing the outstanding pay records is unduly burdensome. There is simply no reason to delay production of this discovery. Thus, in its discretion, the court directs relevant, merits-based discovery to proceed.

### B. Relevance

The court must next address whether the information plaintiffs seek to compel is relevant. As discussed above, relevance at the discovery stage is broadly construed. Information need not be admissible to be relevant. Nonetheless, Epic argues that discovery of pay records for three categories of workers is not relevant to any claim or defense in the case.

7

1. <u>Workers Who Served as Drivers or Foremen</u>

Epic asserts that the pay records for drivers and foremen are not discoverable for two reasons. First, drivers and foremen are exempt from the FLSA and MMWL overtime requirements, so they are not members of plaintiff's proposed MMWL sub-class. Plaintiffs do not dispute this contention. Thus, if statutory claims were the only claims at issue in this case, the court might be inclined to find the pay records of exempt workers not relevant and not discoverable. But the case is not so limited. Rather, as Epic recognizes, "Plaintiffs' [sic] base their breach of contract and unjust enrichment claims on Defendants' alleged promises to H-2B workers to pay time-and-a-half overtime compensation." (ECF 189, at 5.) Plaintiffs' legal theory on these non-statutory claims is that "[w]hen an employer makes such representations to the Government, they are bound by those representations, regardless of whether an exemption would otherwise relieve them of their overtime obligations." (ECF 169, at 14.) Thus, drivers and foremen are part of plaintiffs' proposed Rule 23 class for the non-statutory claims. Their pay records are relevant to such claims.

Next, Epic argues that plaintiffs' legal theory on the non-statutory claims is "irrational." But such a merits-based argument does not speak to whether the documents are relevant and discoverable. *See Mercado v. Arrow Truck Sales, Inc*., No. 23-2052-HLT-ADM, 2024 WL 1557539, at *4 (D. Kan. Apr. 10, 2024) ("[D]efendants seem to be arguing that only information that supports their theory of the case is relevant, whereas information that might bear on plaintiffs' theory of the case is not. But that is not the standard for relevance."). Because drivers and foremen's pay records bear on whether Epic paid them overtime, they are relevant to the plaintiffs' asserted non-statutory claims.

Epic's objection to producing the pay records of drivers and foremen is overruled. Plaintiffs' motion to compel is granted as to this category of documents.

2. <u>Workers Who Received Money Through the Department of Labor Settlement</u>

Epic next objects to providing pay records for workers who received money through a DOL settlement with Epic over Epic's alleged violations of the H-2B provision of the Immigration and Nationality Act. (*See* ECF 189-2.) Epic asserts that the settlement covered the period November 2, 2017—November 1, 2019 (*see id.* at 3), *i.e.*, two of the years for which plaintiffs seek damages on behalf of the proposed class. Epic argues that it should not be required to produce records in response to this request until the request is "appropriately tailored" to a narrower time period. (ECF 189, at 6.)

In response, plaintiffs explain that the pay records of these workers for the entire class period are relevant because the workers may have received less through the settlement than what they are owed. Plaintiffs assert that, "[Epic] may be entitled to an offset for the monies it paid to [its] workers, [but] those workers may be entitled to the difference between what they were owed and what they actually received." (ECF 192, at 3.) Plaintiffs also note that the time period covered by the settlement "only relate[s] to a small portion of the time period at issue in this lawsuit." (ECF 185, at 7.) The court is satisfied that plaintiffs have demonstrated the relevance of these workers' pay records, given the broad and liberal construction of relevance at the discovery stage.

Epic's objection to producing the pay records of workers who received money from the DOL settlement is overruled. Plaintiffs' motion to compel is granted as to this category of documents.

### 3. Workers Whose Job Titles Put Them Outside the Putative Class

Finally, Epic objects to producing pay records for workers whose job titles indicate they do not fall into the putative class because they were paid a salary (not hourly) or were already paid overtime wages. Epic explains, for example, that workers titled Irrigation Service Technicians received overtime compensation during the relevant period, and that certain supervisors and managers were paid salaries during the relevant period. Thus, Epic contends that the pay records of these workers are neither relevant nor responsive to plaintiffs' request.

Plaintiffs argue that Epic "cannot unilaterally decide whether those individuals meet the class definition, and Plaintiffs should be able to examine those records as well." (ECF 185, at 7.) The court disagrees. Lawyers representing producing parties often must decide whether documents in their client's custody and control are responsive. It is the duty of attorneys as officers of the court to fairly make such judgment calls. Plaintiffs do not explain why the situation here would warrant a different approach. For example, plaintiffs do not suggest how this category of workers may fall within the putative class or that special circumstances warrant "auditing" defense counsel's decisions. Quite simply, plaintiffs have not explained *why* Epic cannot unilaterally decide whether certain records in its possession are responsive and relevant.

Epic's objections to producing pay records of workers whose job titles place them outside the putative class is upheld. Plaintiffs' motion to compel is denied as to this category of documents.

* * * * *

In summary, the court finds that now is the appropriate time for the parties to complete all discovery in the case. Plaintiffs' requests for the payroll records of (1) Epic workers who served as foremen and/or drivers and (2) Epic workers who received money from the DOL settlement,

are both timely and relevant.  The court therefore compels Epic to produce these documents by **May 14, 2024**.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel (ECF 185) is granted in part and denied in part, as discussed above.

Dated April 30, 2024, at Kansas City, Kansas.

s/ Angel D. Mitchell<br>
Angel D. Mitchell<br>
U.S. Magistrate Judge

11