## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JOSE GONZALEZ GOMEZ, et al.,
on behalf of themselves and others
similarly situated,

       Plaintiffs,

       v.

EPIC LANDSCAPE PRODUCTIONS, L.C., et al.,

       Defendants.

Case No. 22-2198-JAR-ADM

## MEMORANDUM AND ORDER

Plaintiffs bring this purported class and collective action under the Fair Labor Standards Act ("FLSA") and related wage laws, alleging defendants Epic Landscape Productions, L.C., Epic Landscape Productions, Inc., John Constant, and Marty Siler (collectively, "Epic") willfully failed to pay them overtime compensation.  This matter is now before the court on Defendants' Motion to Compel Discovery Responses.  (ECF 206.)  By way of the motion, Epic asks the court to order plaintiffs Salvador Miranda Ceniceros, Mario Trejo San Juan, Ismael Valenzuela Mota, Alfonso Favela Herrera, and Braulio Perez Valenzuela (collectively, "plaintiffs") to provide complete answers to Defendants' Interrogatory Nos. 4, 11, and 16, and to Request For Production ("RFP") No. 1.  For the reasons explained below, the motion is granted in part and denied in part.

## I.    BACKGROUND

Plaintiffs are current and former landscape laborers whom Epic employed as hourly employees.  They allege that Epic refused to pay them overtime compensation when they worked more than 40 hours in a workweek.  According to plaintiffs, Epic's policy and practice was to pay

its landscape laborers a straight-time hourly rate, without paying a time-and-one-half rate for overtime hours.

On May 30, 2022, plaintiffs filed this action, asserting five claims.  In Count I, plaintiffs allege that Epic violated the FLSA, 29 U.S.C. § 207, by failing to appropriately compensate laborers for overtime work.  In Count II, plaintiffs allege that Epic violated the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. § 290.500, for failing to pay Missouri employees overtime wages.  In Count III, plaintiffs allege that Epic breached its contracts with H-2B workers[1] by agreeing to, but failing to, pay them overtime wages.  In Count IV, plaintiffs allege that Epic's U.S. workers are third-party beneficiaries to Epic's contracts with H-2B workers,[2] and that Epic breached contracts with U.S. workers by failing to provide overtime wages.  Finally, in Count V, plaintiffs allege that Epic was unjustly enriched by improperly retaining money that should have been paid to the non-H-2B workers in the form of overtime wages.  (ECF 69.)

On November 21, 2023, Epic served plaintiffs with interrogatories and requests for production.  Plaintiffs' responses asserted relevance objections and largely did not answer Interrogatory Nos. 4, 11, and 16, and RFP No. 1.  After a lengthy meet-and-confer process, the parties requested a discovery conference with the court.  The court conducted a discovery conference on April 25, 2024.  (ECF 198.)  The court gave the parties guidance as to the potential relevance of the requested documents, then granted Epic leave to file a motion to compel responses to the discovery.  Epic filed the instant motion on May 3.  (ECF 206.)

---

[1] An H-2B worker is a nonimmigrant alien who has "a residence in a foreign country which he has no intention of abandoning who is coming temporarily to the United States to perform ... temporary [nonagricultural] service or labor."  8 U.S.C. § 1101(a)(15)(H)(ii)(b).

[2] 29 C.F.R. § 503.16(q) requires employers to provide U.S. workers the same benefits, wages, and working conditions as H-2B workers.

## II.    LEGAL STANDARDS

Parties may conduct "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  FED. R. CIV. P. 26(b)(1).  At the discovery stage, relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227-JWL-TJJ, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) ("[A]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case will be deemed relevant.").  Relevance is often apparent on the face of the discovery request.  *See Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 652–53 (D. Kan. 2006).

When the discovery sought appears relevant on its face, or the discovering party has established relevance, the party resisting discovery bears the burden to support its objections to production.  *See Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014) (ruling the party resisting discovery bears the burden to show why a discovery request is improper); *Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, No. 08-1250-MLB-KGG, 2012 WL 1080801, at *3 (D. Kan. Mar. 29, 2012) ("Once this low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request.").  The party resisting discovery does not carry this burden by asserting "conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad." *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004).  Rather, an objecting party "must specifically show in its response to the motion to compel, despite the broad and liberal

construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *Id*. at 670-71.

## III.   ANALYSIS

As mentioned above, Epic asks the court to compel plaintiffs to answer Interrogatory Nos. 4, 11, and 16, and RFP No. 1.  The court addresses each request in turn.

### A.   Interrogatory No. 4: Plaintiffs' Work Histories

Epic's Interrogatory No. 4 asked plaintiffs to

> give your work history since high school, including the name and address of the employer, the dates of employment, position(s) held, nature of your duties, rate(s) of pay, including whether the position was "exempt" under the Fair Labor Standards Act, or whether you were paid overtime premium pay, the name of your supervisor(s), and your reason for leaving, if applicable.

(ECF 206-1, at 5-6.)  Plaintiffs objected to answering, asserting that their work histories since high school are not relevant to the claims in this case.  The court agrees and upholds the objection.

This action involves plaintiffs' claims that Epic refused to pay them at a premium rate when they worked more than 40 hours in a work week.  On its face, Interrogatory No. 4—seeking each plaintiff's past work history—does not bear on this issue.  Thus, Epic shoulders the burden of proving Interrogatory No. 4's relevance.  Epic argues the interrogatory is relevant for two reasons: (1) it speaks to plaintiffs' credibility, and (2) it bears on plaintiffs' subjective understanding of whether they entered a contract with Epic in which Epic promised to pay them overtime compensation.  (ECF 206, at 4.)

First, the court does not find any reason why plaintiffs' work histories would be relevant to any credibility issues in this lawsuit.  Epic does not, for example, identify any claim or defense asserted in this lawsuit on which a plaintiff's past job duties or pay rate would make him more or less credible.  In support of Epic's argument that work history is relevant to a worker's credibility,

it cites a single case involving a social security disability appeal.  But social security cases are distinguishable from this case because Social Security Administration regulations specifically permit administrative law judges to take account of a claimant's prior work record in evaluating whether the claimant's testimony of disability is credible.  *See Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (citing 20 C.F.R. § 416.929(c)(3) and 61 Fed. Reg. 34,483, at 34,486 (1996)).  In this case, plaintiffs are not alleging an inability to work due to disability.  Although, broadly speaking, a witness's credibility could always be deemed relevant, courts do not allow fishing expeditions during discovery into credibility issues that are only tangential to a claim or defense in the case.  *See Woods v. Fresenius Med. Care Grp. of N. Am*., No. 1:06-cv-1804-RLY-WTL, 2008 WL 151836, at *1 (S.D. Ind. Jan. 16, 2008) (rejecting argument that "evidence concerning Plaintiff's prior employment is discoverable and relevant to show Plaintiff's credibility" where defendant pointed "to nothing that indicates that the Plaintiff was untruthful to the Defendant or her other employers" and finding that "the Defendant simply wants to 'fish around' in order to see what it might uncover"); *King v. Cellco P'ship*, 543 F. Supp. 3d 1219, 1221 n.10 (D. Utah 2021) ("Although witness credibility is always relevant at trial, whether [plaintiff] was truthful in prior litigation is tangential to 'any party's claim or defense' at issue in this action. Fed. R. Civ. P. 26(b)(1).").  When a defendant seeks to discover a plaintiff's work history, "the defendant must demonstrate a specific reason why the information is relevant to the particular claims and defenses in the case at hand."  *Woods*, 2008 WL 151836, at *1.  Epic has not done so here.  Epic has not explained how plaintiffs' credibility could bear on whether Epic should have paid them overtime compensation based on Epic's records of the times they worked.

Second, plaintiffs' understandings of whether they entered a contract with Epic in which they were entitled to premium overtime compensation is not relevant to any claim in this case.

5

Plaintiffs' breach-of-contract claims are premised on their legal theory that federal laws and regulations applicable to H-2B workers became part of plaintiffs' contracts with Epic *regardless* of plaintiffs' knowledge or understanding (or lack thereof) of any contract with Epic.  (ECF 69, at 33 ("[A] meeting of the minds need not be had for forming a contract . . . the law and regulations applicable to the H-2B program at the time were part of the contract.").)  In other words, plaintiffs contend that Epic's H-2B application submitted to the U.S. Department of Labor formed the employment contract with plaintiffs.  (ECF 210, at 2.)  Thus, under plaintiffs' theory, an individual plaintiff's subjective understanding of a contract entered with Epic is not at all material to plaintiffs' breach-of-contract claims.  Although Epic argues that plaintiffs' legal theory is not supported by Kansas law (such that plaintiffs should pursue a different contractual theory requiring a meeting of the minds), plaintiffs were at liberty to plead the case as they saw fit.  Plaintiffs' work histories are not relevant to the claims as pled.

The court therefore upholds plaintiffs' relevance objection and denies Epic's motion as to Interrogatory No. 4.

### B. Interrogatory Nos. 11 and 16: Plaintiffs' Social Networking and Messaging Accounts

Interrogatory Nos. 11 and 16 seek each plaintiff's social-networking profile(s) and messaging-account username(s):

> Interrogatory No 11:  Please identify any social or professional networking websites for which you have a username and/or password and provide hyperlinks to your profile for each account. The social or professional networking sites referenced in this Interrogatory include, but are not limited to the following: Facebook, Linkedln, Myspace, Twitter, Instagram, YouTube, Google+, Pinterest, TikTok, Tagged, Flickr, Snapchat, and Xanga.
>
> Interrogatory No. 16: Please identify the username for each and every messaging application including Facebook Messenger, SnapChat, TikTok, Instagram, Twitter, WhatsAPP, Line, or other

> messaging applications account you utilized and/or maintained from
> the beginning of your employment with Defendant, to present.

(ECF 206-1, at 9, 11.)  Plaintiffs objected that the information requested was not relevant to the claims in this case.  Epic asserts that plaintiffs' social-networking and messaging activity is relevant to determine whether plaintiffs "engage in non-work-related activities during work hours, affecting their claims for unpaid wages."  (ECF 206, at 5.)  Epic notes that numerous social/professional networking platforms list the date and time of a user's post or message.  (*Id.* at 5-7.)  Epic further contends that activity referencing the lawsuit or issues therein is relevant to the claims and defenses in the case.  The court agrees and finds these interrogatories relevant on their face, thus shifting the burden to plaintiffs to support their objections.

Plaintiffs' first argument in support of their relevance objections is that Epic is seeking "to go on a fishing expedition by exploring Plaintiffs' social media activity without any limitations." (ECF 210, at 3.)  Plaintiffs assert that these interrogatories "dive into everything Plaintiffs post or talk about," even subjects not at issue in this case.  (*Id.* at 4.)  Plaintiffs note—correctly—that requests for unfettered access to the content of social networking accounts and communications are too broad to be deemed relevant.  (*Id.* at 6-7 (citing *Feaster v. Dopps Chiropractic Clinic, LLC*, No. 13-1453, 2017 WL 957436, at *2 (D. Kan. March 13, 2017); *Fisher v. Diagnostic Imaging Centers, PA*, No. 16-2094-JTM, 2016 WL 11468558, at *2 (D. Kan. September 8, 2016); *Smith v. Hillshire Brands,* No. 13-2605-CM-JPO, 2014 WL 2804188, at *4 (D. Kan. June 20, 2014)).  But this observation is a red herring because the plain language of Interrogatory Nos. 11 and 16 do *not* seek access to the content of plaintiffs' social networking and messaging accounts.  Rather, Interrogatory No. 11 only seeks hyperlinks to each plaintiff's account profile page and Interrogatory No. 16 only seeks each plaintiff's username for messaging accounts.  Contrary to plaintiffs' argument, Epic is not, via these interrogatories, seeking to explore all of plaintiffs' social

media activity.  Epic is not seeking the content of any posts or messages.  Epic is not requesting passwords to access any account.  Were plaintiffs to list the links to their profile pages and usernames in response to these interrogatories, doing so would not grant Epic access to any of plaintiffs' private content.  Rather, Epic could only use the information to view plaintiffs' public postings.  (*See* ECF 216, at 2.)  To the extent a public posting references Epic or a plaintiff's employment with Epic, it is relevant.  *Feaster*, 2017 WL 957436, at *2 ("To the extent Plaintiff mentioned Defendants or his employment with them in any such discarded or altered social media postings, the same are both relevant and discoverable."); *Walker v. Corizon Health, Inc.,* 17-2601-DDC, 2018 WL 6602229, at * (D. Kan. Dec. 17, 2018) ("The Court finds that any of [plaintiff]'s Facebook messenger communications, from any account she maintains, regarding . . . the events at issue in this case are relevant and discoverable."); *Smith*, 2014 WL 2804188, at *4 ("[P]laintiff's social networking activity that references in any way defendant or matters asserted in plaintiff's complaint is relevant.").  And no privacy and proportionality concerns are implicated here because any viewable postings are public, and Epic will be able to review them at its own expense.

The court therefore finds Interrogatory Nos. 11 and 16 relevant on this basis.  The court could stop its analysis here, but will also briefly address Epic's argument that the interrogatories also are relevant to show whether plaintiffs were working during the hours for which they seek compensation.  Epic notes that social media postings and messages often are marked with the date and time at which they were posted or sent (ECF 206, at 6-7), and such markings might even show a plaintiff was not at work during work hours (*id.* at 2).  Plaintiffs respond that, even if the requested discovery leads to information showing plaintiffs were engaged in social-networking activity while on duty, such information is not relevant.  (ECF 210, at 5.)

In support of plaintiffs' argument, they first attack Epic's defenses on their legal merits. Plaintiffs argue that it is "unfathomable" for Epic to suggest that it should not have to pay an overtime premium for time plaintiffs spend on social media, given that Epic already compensated plaintiffs for that time.  (*Id.* at 5.)  Plaintiffs have not, however, cited any binding precedent or legal authority that forecloses Epic's legal theory.  Plaintiffs do not satisfy their burden of demonstrating the information is not relevant and discoverable by simply labeling Epic's theory "unfathomable," without providing any further support.  Because Interrogatory Nos. 11 and 16 bear on a legal defense that Epic has asserted and that plaintiffs have not demonstrated is clearly without merit, the court finds them relevant. *See Gomez v. Epic Landscape Prods., L.C.,* No. 22-2198-JAR-ADM, 2024 WL 1885507, at *4 (D. Kan. Apr. 30, 2024) (citing *Mercado v. Arrow Truck Sales, Inc.*, No. 23-2052-HLT-ADM, 2024 WL 1557539, at *4 (D. Kan. Apr. 10, 2024) ("[D]efendants seem to be arguing that only information that supports their theory of the case is relevant, whereas information that might bear on plaintiffs' theory of the case is not. But that is not the standard for relevance.")).

Next, plaintiffs reason that because Epic's time-keeping system does not record when a worker takes a break or is off the clock for lunch, the timing of any social-media activity is not indicative of whether a plaintiff was performing personal acts "during the time [he] was to be working." (ECF 210, at 5-6).  Likewise, plaintiffs cite cases for the proposition that workers must be compensated for on-the-job waiting time, even if they engage in personal activities during that time.  (*Id.* at 6.)  Nonetheless, the court finds Interrogatory Nos. 11 and 16 could lead to information showing a plaintiff was *excessively* engaged in social-networking activity (e.g., for longer than approved break or waiting times), which could bear on Epic's legal defense.  The court therefore overrules this relevance objection. *See Fisher*, 2016 WL 11468558, at *2 ("The court

has no difficulty finding relevant the requested information that might indicate plaintiff engaged in personal business (i.e., . . . text messages, e-mail exchanges, or social media browsing or posting) during hours she claimed she worked but was not properly compensated [because it] directly speaks to defendant's defense that time for which plaintiff seeks compensation was not compensable working time.").

The court therefore overrules plaintiffs' relevance objections to responding to Interrogatory Nos. 11 and 16, and grants Epic's motion to compel as to this discovery.

### C.  RFP No. 1: Plaintiffs' Contracts With Their Attorneys

Finally, Epic's RFP No. 1 asks each plaintiff to "produce, and identify by bates number, any contract that you have with your attorneys relating to this matter." (ECF 206-2, at 4.)  Plaintiffs objected that their contracts with their attorneys are not relevant to any claims or defenses in this case.

Epic asserts that attorney contracts "are relevant to show whether and when a party retained their attorney." (ECF 206, at 8.)  This may be true, but, to be discoverable, the contracts must be relevant to *a claim or defense* in the case.  The issue—as framed by Epic—of "whether opposing counsel actually represents these Plaintiffs," is not a claim or defense at issue in this case. (*Id.* at 9.)

Epic also suggests that the agreements are relevant to whether plaintiffs are subject to a tolling agreement that Epic entered with specified workers represented by plaintiffs' counsel. (*See* ECF 206-32.)  Presumably, if a plaintiff promised by way of the tolling agreement not to prosecute a lawsuit against Epic, Epic would assert that fact as a defense in this action.  Epic notes that plaintiff Alfonso Favela Herrera is listed as a party to the tolling agreement. (*See id.* at 4.) Herrera's contract with his counsel—the same counsel who signed the tolling agreement—could

bear on this defense.  Although it is a close call, the court is mindful of the broad standard of relevance at the discovery stage.  The court finds that Epic has demonstrated Herrera's contract with his counsel, if any, is relevant.  Thus, the burden shifts to plaintiffs to support their objection to production.  In responding to the motion to compel, plaintiffs did not address or explain Herrera's inclusion on the tolling agreement.  Thus, plaintiffs have not supported their relevance objection as to Herrera's contract.  The court therefore grants Epic's motion to compel Herrera's response to RFP No. 1.

Epic has not, however, demonstrated the relevance of RFP No. 1 to a claim or defense applicable to any other plaintiff.  Accordingly, Epic's motion to compel is otherwise denied.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel Discovery Responses (ECF 206) is granted in part and denied in part, as discussed above.  Specifically, plaintiffs are ordered to respond to Interrogatory Nos. 11 and 16, and plaintiff Herrera is ordered to respond to RFP No. 1, by **May 31, 2024.**  Defendants' motion is otherwise denied.

Dated May 17, 2024, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge