## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**JOSE GONZALEZ GOMEZ ET AL.,**

    **Plaintiffs,**

    **v.**                                    **Case No. 22-CV-2198-JAR**

**EPIC LANDSCAPE PRODUCTIONS, L.C.;**
**JOHN CONSTANT; MARTY SILER; AND**
**EPIC LANDSCAPE PRODUCTIONS, INC.** ,

    **Defendants.**

### MEMORANDUM AND ORDER

Plaintiffs, currently or formerly employed by Defendants as lawn and landscape workers, bring this putative class and collective action under the Fair Labor Standards Act ("FLSA")[1] and state law, alleging that Defendants failed to pay overtime compensation for all hours worked in excess of 40 in a workweek.[2] This matter is before the Court on Defendants' motion to decertify Plaintiffs' FLSA collective (doc. 250) and Plaintiffs' amended motion for class certification, appointment of class representatives and appointment of class counsel (doc. 267).  As described more fully below, the Court denies the motion to decertify the collective and grants the motion for class certification, appointment of class representatives and appointment of class counsel.

I.      **Background**

---

[1] 29 U.S.C. § 201 et seq.

[2] Defendant Epic Landscape Productions, L.C., provides lawn care and landscaping services for commercial and residential clients in Kansas and Missouri.  It is a limited liability company with two members—Defendant Epic Landscape Productions, Inc. and Silbrook Landscape, Inc.  Those two entities, in turn, are holding companies through which Defendants John Constant and Marty Siler hold their ownership shares in Defendant Epic Landscape Productions, L.C.

Plaintiffs are current and former lawn and landscape workers employed by Defendants. Defendants provide lawn care and landscaping services for commercial and residential clients in Kansas and Missouri. Defendants employ temporary laborers from Mexico using the H-2B visa program as well as local laborers who are United States citizens. As part of the H-2B program, Defendants applied for temporary labor certifications with the U.S. Department of Labor (DOL) to employ seasonal workers. Plaintiffs assert that Defendants, in the visa application forms, made representations about the wage rate it would pay its workers, including whether it would pay overtime and at what rate. The DOL approved Defendants' applications, allowing Defendants to hire H-2B workers each season.

According to Plaintiffs, Defendants' lawn and landscape workers spent the vast majority of their workdays engaged in manual labor and they routinely worked in excess of 40 hours per week without overtime compensation.[3] According to Defendants, lawn and landscape laborers perform a variety of duties throughout the day depending on specific job titles and specific work environments. Defendants contend that their lawn and landscape workers, including all Plaintiffs, are exempt from overtime requirements by virtue of the Motor Carrier Act ("MCA") exemption and all Plaintiffs were uniformly classified as exempt under the MCA until July 2021. During this litigation, Defendants have asserted two additional exemption defenses, arguing that Plaintiffs employed in Defendants' nursery are exempt under the agricultural exemption and that certain Plaintiffs are exempt under the administrative exemption.

In the pretrial order, Plaintiffs assert five claims against Defendants. In Count I, Plaintiffs allege that Defendants violated the FLSA by failing to pay overtime compensation for

---

[3] It is undisputed that Defendants did not pay any overtime to their lawn and landscape workers until July 4, 2021.

all hours worked in excess of 40 hours in a workweek until July 4, 2021, when Defendants began paying overtime compensation.  In April 2023, the Court conditionally certified Count I as an FLSA collective action.  The Court defined the conditional collective as: "All current and former lawn and landscape workers, who worked for the Defendants at any time from April 28, 2020 through the date the Court grants conditional certification."  The FLSA collective action now includes approximately 250 Named and Opt-In Plaintiffs (all referred to collectively herein as "Plaintiffs").

The remaining claims set forth in the pretrial order are Rule 23 state law class claims. Plaintiffs allege in Count II that Defendants violated the Missouri Minimum Wage Law ("MMWL") by failing to pay overtime compensation to a class of workers employed in Defendants' Kansas City, Missouri location.  Plaintiffs allege in Count III that Defendants breached their contracts with a class of H-2B workers by failing to pay overtime compensation as promised in Defendants' H-2B visa application documents.  Plaintiffs alleged in Count IV that a class of workers who are United States citizens are third-party beneficiaries of Defendants' contracts with the H-2B workers based on a federal regulation requiring Defendants to pay citizen workers the same wages as H-2B workers and, accordingly, the citizen workers are entitled to overtime compensation by virtue of those H-2B contracts.  In Count V, Plaintiffs set forth claims of unjust enrichment as an alternative to the third-party beneficiary claims of the citizen-worker class.

## II.    Defendants' Motion to Decertify the FLSA Collective[4]

---

[4] While many courts use the term "class" in the FLSA context, this Court utilizes the term "collective" in recognition that this action proceeds under the FLSA and is different from a class action that proceeds under Rule 23 of the Federal Rules of Civil Procedure. *See Bowling v. DaVita, Inc*., No. 21-CV-03033-NYW-KLM, 2023 WL 4364140, at *2 (D. Colo. July 6, 2023).

Plaintiffs allege that Defendants violated the FLSA by failing to pay overtime compensation for all hours worked in excess of 40 hours in a workweek.  In April 2023, the Court conditionally certified Count I as an FLSA collective action, comprising "all current and former lawn and landscape workers, who worked for the Defendants at any time from April 28, 2020 through the date the Court grants conditional certification."  In finding that Plaintiffs were "similarly situated" for purposes of sending notice of the action to potential collective action members, the Court relied in large part on Plaintiffs' allegation that they were uniformly classified as exempt under the Motor Carrier Act (MCA) exemption.[5]

This case is now at the second stage of the Tenth Circuit's method for determining whether a suit may proceed collectively under the FLSA—discovery is complete and Defendants have filed a motion to decertify the collective.[6] In ruling on the motion to decertify, "the court . . . makes a second determination, utilizing a stricter standard of 'similarly situated.'"[7] If the claimants are indeed similarly situated, "the district court allows the representative action to proceed to trial."[8] If the claimants are not similarly situated, the district court decertifies the collective, dismisses the claims of the opt-in plaintiffs without prejudice, and the original plaintiffs proceed to trial on their individual claims.[9] In determining whether Plaintiffs here have satisfied their burden to establish they are similarly situated, the Court "reviews several factors, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3)

---

[5] Doc. 76.

[6] *Thiessen, v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001).

[7] *Id*. at 1103.

[8] *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90–91 (2003).

[9] *Id*.

fairness and procedural considerations."[10] The decision whether to decertify a collective action is within the district court's discretion.[11]

In order to determine whether the members of this collective action are similarly situated for purposes of final certification, the Court must also consider the contours of the specific exemptions raised by Defendants in an effort to ascertain whether those exemptions can be applied collectively in the context of this case.[12] Under the FLSA, the general rule is that any employee who works more than forty hours in a workweek must receive overtime compensation.[13] This "overtime-pay rule is subject to several enumerated exemptions."[14] One such exemption is the Motor Carrier Act ("MCA") exemption, which excuses common and private motor carriers from their obligation to pay overtime to any employee over "whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to" 49 U.S.C. § 31502.[15] The MCA exemption applies only to employees who are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary of Transportation's jurisdiction and "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the [MCA]."[16]

---

[10] *Thiessen*, 267 F.3d at 1103 (internal quotations omitted). *Thiessen* includes a fourth factor, namely, whether plaintiffs made the filings required by the ADEA before instituting suit, which is not applicable to FLSA cases. *See id.*

[11] *Id.* at 1102 (citations omitted).

[12] *See Green v. Harbor Freight Tools USA, Inc.*, 888 F. Supp. 2d 1088, 1094 (D. Kan. 2012). The Court does not determine on the pending motion for decertification whether Plaintiffs properly would be classified as exempt employees, and it does not express any opinion on that issue at this juncture.

[13] *See* 29 U.S.C. § 207(a)(1).

[14] *Cunningham v. Circle 8 Crane Servs., LLC*, 64 F.4th 597, 600 (5th Cir. 2023) (citation omitted).

[15] *Kelley v. Alpine Site Servs., Inc.*, 110 F.4th 812, 814 (5th Cir. 2024) (citing 29 U.S.C. § 213(b)(1); 49 U.S.C. § 31502(b)(1)–(2); 29 C.F.R. § 782.2)).

[16] *Id.* at 815 (quoting 29 C.F.R. § 782.2(a)).

To fall within the Secretary of Transportation's jurisdiction, an employee must devote "a substantial part of his time to activities directly affecting safety of operation."[17] Four classes of employees are typically covered by the MCA exemption if their work directly affects the safety of motor vehicles in interstate commerce: drivers, driver's helpers, loaders, and mechanics.[18]  To determine whether an employee falls into one of the covered employee categories, "'neither the name given to his position nor that given to the work that he does is controlling;' it is the character of his job duties and activities."[19] Defendants uniformly classified all Plaintiffs as exempt under the MCA exemption.

During this litigation, Defendants have also asserted that all Plaintiffs employed in Defendants' nursery are exempt from overtime pay by virtue of the agricultural exemption.[20] The FLSA defines "agriculture" as including:

> farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities . . ., the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.[21]

The Department of Labor has promulgated several provisions interpreting the agricultural exemption as it relates to nursery and landscaping operations.[22]

---

[17] *Williams v. Cent. Transp. Int'l, Inc.*, 830 F.3d 773, 776 (8th Cir. 2016) (citing *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 674, 681 (1947)).

[18] *Kelley*, 110 F.4th at 815 (citing 29 C.F.R. § 782.2(b)(1)–(2)).

[19] *Id*. (quoting 29 C.F.R. § 782.2(b)(2)).

[20] 29 U.S.C. § 213(b)(12).

[21] *Id*. § 203(f).

[22] 29 C.F.R. § § 780.205, 780.206.

The third exemption relied upon by Defendants in this litigation is the administrative exemption.[23] The administrative exemption applies to employees who are compensated on a salary or fee basis at not less than the level set forth in 29 C.F.R. § 541.600; whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.[24]  In their submissions, Defendants contend that some but not all Plaintiffs who served as managers or assistant managers are exempt from overtime pay as administrative employees.[25]

After considering the factors relevant to the second stage of the procedure under § 216(b) through the lens of the exemptions raised by Defendants, the Court concludes that all Plaintiffs in the collective are substantially similar in all relevant respects and that their claims, along with Defendants' defenses, can be tried through representative proof.  The Court, then, denies Defendants' motion to decertify.

A.    *Factual and Employment Settings of the Individual Plaintiffs*

The first factor for the Court to consider at the decertification stage is the factual and employment settings of Plaintiffs.  In support of their motion to decertify, Defendants dedicate a

---

[23] *See* 29 U.S.C. § 213(a)(1).

[24] 29 C.F.R. § 541.200.

[25] Defendants also assert that "managerial workers arguably do not fall under the FLSA collective definition that the Court approved."  Presumably, Defendants are suggesting that these employees are salaried as opposed to hourly workers.  But Defendant's own evidence demonstrates that some employees whom Defendants considered managers or assistant managers remained hourly workers for some time after becoming "managers."  And the record does not indicate whether these "managers" still engaged primarily in manual labor despite Defendants' designation of those employees as managers.  In any event, Defendants may present this issue by separate motion in advance of trial if appropriate.

significant portion of their brief attempting to show the myriad ways in which Plaintiffs' job titles, experiences and duties vary.  According to Defendants, Plaintiffs include foremen, laborers, managers, assistant managers, mechanics and nursery workers.  Defendants assert that some Plaintiffs drove trucks while others did not; that some Plaintiffs helped load equipment while others did not; that some Plaintiffs took phone calls for drivers while others did not; that Plaintiffs helped complete vehicle safety checks while others did not; that some Plaintiffs crossed state lines frequently while others did so less often; and that some Plaintiffs visited only one job site per day while others visited multiple sites per day.

The problem with Defendants' argument is that Defendants fail to show how any of these differences among Plaintiffs are material to the core questions of whether all Plaintiffs qualify as exempt under the MCA exemption (as Defendants allege); whether nursery workers qualify as exempt agricultural employees; and whether managers and/or assistant managers qualify as exempt administrative employees. While the answer to those questions turns to some extent on the individual employment experience of each Plaintiff, Plaintiffs' evidence tends to show that those experiences are substantially similar in the most important way—how Plaintiffs spend the vast majority of their time at work.[26]  Defendants' own internal productivity reports and Plaintiffs' representative testimony suggest that Plaintiffs, despite minor differences in tasks and regardless of job title, all spend or spent the significant majority of their time performing routine lawn-and-landscape manual work.  In light of this collective proof and common evidence, there is nothing so individualized about the employment experiences of each individual Plaintiff that would warrant decertification.  As Judge Kays aptly summarized in *Albelo* in denying Epic's

---

[26] *Drake v. Steak N Shake Operations, Inc*., 286 F. Supp. 3d 1040, 1051 (E.D. Mo. 2017) (where focus of case was whether employees were exempt and plaintiffs shared largely uniform description of their actual job experiences, collective treatment was appropriate).

decertification motion,[27] none of these minor differences outweigh "the common questions of law and fact here, such as whether Epic paid landscape workers overtime, and whether Epic properly classified them as exempt under the Motor Carrier Act ("MCA") exception."[28] Moreover, Defendants' uniform classification of all Plaintiffs as exempt under the MCA exemption, while not dispositive, is telling.[29]  In applying the exemption to all Plaintiffs, Defendants did not engage in any individualized analysis of any Plaintiff's job duties or employment experiences.  Rather, Defendants applied the exemption to all Plaintiffs regardless of duties or title.  Defendants' blanket application of the exemption to all lawn and landscape workers supports the conclusion that all workers, regardless of job titles or minor differences in their daily activities, performed largely the same work.  This factor, then, weighs in favor of collective treatment.

The agricultural and administrative exemptions raised by Defendants can also be applied collectively.  The agricultural exemption applies, if at all, only to nursery workers and Defendants do not suggest that nursery workers varied in their job duties.  This exemption, then, can be addressed at trial, if not on summary judgment, with the creation of a subcollective or

---

[27] All parties direct the Court at various times to the Albelo case in the Western District of Missouri. *Albelo* involved FLSA and state law claims asserted by lawn and landscape workers employed by Epic Landscape Productions, L.C.—the only named defendant.  In that case, Judge Kays denied Epic's motion for decertification based largely on the fact that Epic applied the MCA exemption uniformly to all lawn and landscape laborers, who shared substantially similar job duties.  *See Albelo v. Epic Landscape Productions, LC*, No. 4:17-cv-0454-DGK, 2021 WL 2213305, at *2-3 (W.D. Mo. June 1, 2021).  Judge Kays, however, denied the plaintiffs' motion for Rule 23 class certification of their state law claims. *Albelo v. Epic Landscape Productions, L.C.,* No. 4:17-cv-0454-DGK, 2021 WL 2651809, at *2-7 (W.D. Mo. June 28, 2021).  That decision stemmed primarily from the fact that the plaintiffs proposed only one class that included both H-2B workers and citizen workers despite distinct legal theories, defeating many of the Rule 23 requirements, including commonality, typicality, adequacy and predominance.

[28] *Albelo,* 2021 WL 2213305, at *2.

[29] *Mode v. S-L Distribution Co., LLC*, No. 3:18-CV-00150-KDB-DSC, 2021 WL 3921344, at *4 (W.D.N.C. Sept. 1, 2021) (uniform classification of all plaintiffs weighed in favor of collective treatment despite disparate employment experiences urged by defendant); *Nerland v. Caribou Coffee Co*., 564 F. Supp. 2d 1010, 1023–24 (S.D. Fla. 2007) (holding company's "all or nothing" approach to exemption analysis of store managers counseled in favor of finding plaintiffs were similarly situated).

other trial management tools.  The administrative exemption applies, if at all, only to employees

who, among other things, were paid on a salary basis.  Because it appears that all parties intend

to include only hourly workers in this collective action,[30] this exemption can likely be resolved

on a collective basis prior to trial.

In support of their motion, Defendants rely exclusively on four FLSA collective action

cases from this District that were decertified after discovery—*Blair v. TransAm Trucking, Inc.*,

309 F. Supp. 3d 977 (D. Kan. 2018) (Melgren, J.); *Swartz v. DJ Engineering, Inc.*, No. 12–CV–

01029–DDC–KGG, 2015 WL 4139376 (D. Kan. July 9, 2015) (Crabtree, J.); *Green v. Harbor*

*Freight Tools USA, Inc.*, 888 F.Supp.2d 1088 (D. Kan. 2012) (Robinson, J.); and *Scott v. Raudin*

*McCormick, Inc.*, No. 08–4045–EFM, 2010 WL 5093650 (D. Kan. Dec. 8, 2010) (Melgren, J.).

None of these cases is persuasive to the Court here because the circumstances of those cases are

different in meaningful ways.  In *Blair*, the plaintiffs were truck drivers who were allegedly

misclassified by the defendant as independent contractors.[31]   All plaintiffs leased trucks from a

related entity for the purpose of driving and making deliveries and all were prohibited from

driving for anyone other than the defendant.[32]  On the defendant's motion for decertification,

Judge Melgren determined that the drivers' factual and employment settings were too dissimilar

for collective treatment.[33]  Significantly, the fact-intensive economic realities test implicated by

the independent contractor issue required a "totality of circumstances" approach and the facts

---

[30] The Court, at Plaintiffs' request, conditionally certified a collective of current and former lawn and landscape "workers" with no reference to whether the workers were paid on an hourly or salary basis. The pretrial order, however, expressly limits Plaintiffs' FLSA claims to hourly laborers. *See* Doc. 284, p. 14 ("Defendants violated the FLSA by failing to pay overtime compensation to hourly laborers . . . .").

[31] 309 F. Supp. 3d 977, 999 (D. Kan. 2018).

[32] *Id.*

[33] *Id.* at 1002-03.

pertinent to that test varied widely for each driver.[34]  The exemptions raised by Defendants in this case do not require a totality of the circumstances analysis or application of the economic realities test.  In this case, the record supports the conclusion that all Plaintiffs performed substantially the same tasks such that the jury, on a collective basis, can determine whether the asserted exemptions apply.

In *Swartz*, the court had conditionally certified two collectives.[35]  The first one claimed that the defendant had classified each of the plaintiffs as an exempt executive, administrative, or professional employee but engaged in compensation practices that violated the salary-basis requirement for these exemptions.[36]  The court in fact denied the motion to decertify with respect to this collective, finding that the plaintiffs' assertion that the defendant had violated the salary-basis rule rendered the plaintiffs similarly situated regardless of varying job duties or job classifications.[37] The court did, however, decertify the collective comprised of engineer-plaintiffs, a two-person collective alleging that their assigned responsibilities failed to meet the duties-test to qualify for the professional employee exemption.[38] But the court found that the two plaintiffs had very little in common in terms of job duties and experiences and that their theories of misclassification also differed.[39]  Here, by contrast, there is substantial evidence that all Plaintiffs shared similar job duties and performed those same duties during most of each workday.  And Plaintiffs' theory of misclassification—their substantially similar job duties do

---

[34] *Id.* at 1003.

[35] 2015 WL 4139376, at *1 (D. Kan. July 9, 2015).

[36] *Id.* at *7.

[37] *Id.* at *8.

[38] *Id.* at *11.

[39] *Id.*

not qualify for any exemption identified by Defendants—is the same for all Plaintiffs. *Swartz*, then, does not support decertification in this case.

*Green*, too, is inapposite.  In that case, the undersigned judge decertified a collective of thirty-six plaintiffs who were all employed by the defendant as Store Managers and whom the defendant had classified as exempt from the FLSA overtime requirements under the executive and administrative exemption provisions.[40]  In so holding, the Court found that "an inquiry into the daily job duties of each individual plaintiff to identify the actual scope of his or her job duties" was necessary because the plaintiffs argued that their job description did not accurately depict their day-to-day job duties, all of which varied depending on the particular store.[41]  In essence, the plaintiffs in *Green* could point to no competent generalized evidence of a uniform scope of duties sufficient to prove their misclassification claims.[42]  Plaintiffs here have come forward with evidence showing that they performed substantially similar duties on a daily basis and, more importantly, that any differences in those duties (*e.g.*, spending a few minutes loading a landscaping truck) are not significant enough to change the exemption analysis.[43]

Finally, the *Scott* case involved a collective action of plaintiffs employed by the defendant as drivers whose duties required them to transport railroad company crews to various locations.[44]  The drivers, who primarily asserted off-the-clock claims, were employed in one of

---

[40] *Green v. Harbor Freight Tools USA, Inc.*, 888 F. Supp. 2d 1088, 1093 (D. Kan. 2012).

[41] *Id.* at 1098-99.

[42] *Id.* at 1099.

[43] In *Green*, this Court rejected the notion that an employer's "blanket" classification policy automatically qualified all plaintiffs as similarly situated or eliminated the need to make a factual determination as to whether the plaintiffs were actually performing similar duties. 888 F. Supp. 2d at 1099.  Here, of course, the Court does not suggest that Defendants' uniform classification of all Plaintiffs mandates the conclusion that Plaintiffs are similarly situated or that their claims necessarily can be resolved collectively. But Defendants' blanket application of the MCA exemption in this case supports the conclusion, buttressed by other evidence in the record, that all Plaintiffs were performing substantially similar work for most of their workdays.

[44] 2010 WL 5093650, at *1 (D. Kan. Dec. 8, 2010).

three positions and each position involved different driving distances and varying compensation practices with some overlap of positions among the plaintiffs.[45]  Moreover, the defendant's pay practices were inconsistently applied among the plaintiffs regardless of what position they were in (*e.g.*, some were paid overtime, others were not; some were paid for safety meetings, others were not) and the nature and extent of the alleged off-the-clock activities varied widely among the plaintiffs (*e.g.*, some were required to attend safety meetings, others were not required to attend).[46]  Perhaps most significantly, the plaintiffs conceded in *Scott* that "a highly individualized analysis would be required that would entail reviewing each individual Plaintiff's time and mileage entries for each completed trip for each day or shift worked for each week within the class period" to determine whether a given plaintiff was performing exempt work.[47] The court, then, found that the "fact-intensive analysis" necessitated by the plaintiffs' claims warranted decertification.[48]  In this case, Plaintiffs' claims and the asserted exemptions will not require a highly individualized factual assessment because the numerous and varied inconsistencies among the plaintiffs' experiences in *Scott* are not present.

In summary, the record reflects that the factual and employment settings of individual Plaintiffs are substantially similar with respect to the key issues bearing on the specific exemptions raised by Defendants.  The first factor, then, weighs in favor of final collective adjudication of Plaintiffs' claims.

B.      *The Existence of Individualized Defenses*

---

[45] *Id.*

[46] *Id.* at *3.

[47] *Id.* at *4.

[48] *Id.*

Defendants assert that the Court must decertify the collective action because they will assert numerous individualized defenses against the claims brought by each Plaintiff. Specifically, Defendants contends that they will assert defenses to liability as to each Plaintiff (namely, one or more of the three exemptions raised by Defendants) and defenses to damages that will require an individualized calculation of each Plaintiff's damages.

Defendants first assert that individual considerations related to each Plaintiff's exempt status warrants decertification. Here, Defendants summarize their arguments made with respect to the first factor—six different employment positions are at play in this case and Plaintiffs performed different job duties among those positions and even within the same positions. According to Defendants, these differences make any assessment of whether a given exemption applies to each Plaintiff a "Herculean task" in the collective context. But the key here is not whether an exemption applies, but whether "the application of the exemption can be determined on a collective basis."[49] The evidence in the record here reflects that a jury can apply the exemptions raised by Defendants on a collective basis. Defendants have not shown any material differences in job duties among Plaintiffs that would require an individualized assessment of any of the exemptions raised by Defendants. In fact, the record indicates that all Plaintiffs spent the vast majority of their work time performing the same or substantially similar manual tasks. And of course, Defendants applied the MCA exemption with a broad brush to all Plaintiffs irrespective of any minor differences in duties, supporting the conclusion that there are no material differences in Plaintiffs' job duties.[50]

---

[49] *Deakin v. Magellan Health, Inc.*, No. 1:17-CV-00773-MLG-KK, 2024 WL 3829737, at *12 (D.N.M. Aug. 14, 2024).

[50] Moreover, to the extent Defendants now rely on the agricultural exemption or the administrative exemption, the record reflects that those exemptions apply, if at all, to a well-defined subgroup of Plaintiffs and, accordingly, can be addressed collectively and, in all likelihood, through pretrial motion practice.

Defendants also assert numerous defenses that may limit or otherwise affect the measure of damages for each Plaintiff.  Defendants highlight that different statutes of limitations will apply to various Plaintiffs; that some Plaintiffs may have participated in a prior Department of Labor settlement or the *Albelo* settlement;[51] that some Plaintiffs became salaried during the applicable time period; and that the specific employment dates of some Plaintiffs may limit damages.  But Defendants have not shown that any of these defenses render collective treatment of the FLSA claims unmanageable or inefficient and these are the very issues that are routinely addressed in FLSA collective actions.[52]

In short, none of the defenses highlighted by Defendants, either alone or taken together, merits decertification.  While the Court recognizes that not all of Defendants' affirmative defenses are necessarily conducive to representative testimony, the Court is confident that those issues in large part can be resolved through motion practice.

---

[51] Defendants contend in the pretrial order that any Plaintiff who knew about the *Albelo* litigation but declined to opt-in to that litigation is precluded from participating here.  Defendants' theory is that those Plaintiffs, by failing to participate in *Albelo*, induced Defendants into believing that those Plaintiffs did not intend to assert FLSA claims for overtime against Defendants and that Defendants reasonably relied upon this belief when they agreed to settle *Albelo*.  According to Defendants, they might not have settled on the terms they did if they knew that they would face additional FLSA claims in a subsequent lawsuit.  This "defense" does not preclude collective treatment in any respect and can resolved through motion practice.

[52] *Perry v. Hardeman Cnty. Gov't*, No. 1:19-CV-01106-STA-CGC, 2024 WL 2064465, at *12 (W.D. Tenn. May 8, 2024) (fact that many dispatchers had different measure of damages based on different statutes of limitation did not weigh in favor of decertification and did not render collective treatment of the dispatchers' claims unmanageable); *Hodge v. N. Carolina Dep't of Pub. Safety*, No. 5:19-CV-478-D, 2024 WL 499523, at *11 (E.D.N.C. Feb. 8, 2024) ("It would be inefficient 'to deny the collective adjudication of these claims merely because the statute of limitations must be applied to each plaintiff individually when determining damages.'") (quotations and citations omitted); *Charbonneau v. Mortg. Lenders of Am. LLC*, No. 2:18-CV-02062-HLT-ADM, 2021 WL 84171, at *7 (D. Kan. Jan. 11, 2021) (statute of limitations defense and fact that some plaintiffs received backpay awards in DOL settlement did not require decertification); *see also McElwee v. Bryan Cowdery, Inc*., No. 2:21-CV-1265, 2023 WL 4423880, at *12 (S.D. Ohio July 10, 2023) ("If collective litigation would be efficient for liability but not damages, similarly situated plaintiffs should be permitted to proceed to trial collectively on liability, with damages addressed separately."); *Deakin v. Magellan Health, Inc*., No. 1:17-CV-00773-MLG-KK, 2024 WL 3829737, at *13 (D.N.M. Aug. 14, 2024) (when "generalized proof" applies to misclassification claims, collective treatment is appropriate even when damages may differ).

C.      *Fairness and Procedural Considerations*

Finally, the Court weighs fairness and procedural considerations in determining whether Plaintiffs are similarly situated and concludes that these considerations weigh in favor of collective adjudication as well.[53] "The primary objectives of a § 216(b) collective action are: (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity."[54] Here, Defendants do not contest that a collective adjudication of Plaintiffs' claims will lower costs to the Plaintiffs. But they urge that decertification is required because individualized evidence specific to each Plaintiff overwhelms any common issues and that proof by representative evidence is unfair to Defendants. The Court is not persuaded by these arguments.

As explained in more detail above, Plaintiffs have set forth a common theory of liability—namely, that Defendants systematically failed to pay Plaintiffs overtime compensation for hours worked in excess of 40 per week. The record reflects that Plaintiffs shared similar job duties and all Plaintiffs, regardless of any minor deviations of job duties among them, were uniformly treated as exempt from the overtime requirements of the FLSA by virtue of Defendants' blanket application of the MCA exemption. Plaintiffs have come forward with evidence that Defendants maintained productivity reports suggesting that all Plaintiffs routinely spent roughly 90 percent of their workdays performing non-exempt work. Plaintiffs' representative testimony supports this conclusion. In light of Plaintiffs' common theory of

---

[53] *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001).

[54] *Charbonneau v. Mortg. Lenders of Am. LLC*, No. 2:18-CV-02062-HLT-ADM , 2021 WL 84171, at *8 (D. Kan. Jan. 11, 2021) (citing *Underwood v. NMC Mortg. Corp.*, No. 07-2268-EFM, 2009 WL 1322588, at *4 (D. Kan. 2009)).

liability, Defendants' uniform exemption policy, and the common proofs asserted by the parties, proceeding with this case as a collective action represents a fair and efficient way to resolve the parties' dispute.[55] For this reason, the court also rejects Defendants' related argument that the jury will experience confusion by having to apply three exemptions to hundreds of individual employees.

The court also rejects Defendants' argument that proof by representative evidence will prejudice Defendants. While Defendants assert the need to cross-examine every Plaintiff, this argument could be raised in almost all collective actions with a substantial number of plaintiffs. But courts have long permitted the use of representative evidence to establish or defend against liability in class and collective actions,[56] and many courts have deemed it appropriate to allow representative evidence even where the employer raised exemption defenses.[57] Defendants have simply not persuaded the court that the exemptions at issue here are so individualized that testifying Plaintiffs cannot fairly represent non-testifying Plaintiffs. Moreover, the court is confident that any individualized issues that might remain for trial after motion practice can be managed through any number of trial management tools available to it. The court, then, is persuaded that this case can be efficiently and fairly tried through representative proof and that

---

[55] *See Guy v. Absopure Water Co., LLC*, No. 20-12734, 2023 WL 5953225, at *8 (E.D. Mich. Sept. 12, 2023) (collective action was fair and efficient way to resolve parties' dispute where plaintiffs shared common theory of liability and similar job duties and defendant classified all plaintiffs as exempt under MCA exemption).

[56] *See, e.g., Mode v. S-L Distribution Co., LLC*, No. 3:18-CV-00150-KDB-DSC, 2021 WL 3921344, at *13 (W.D.N.C. Sept. 1, 2021) (rejecting defendant's argument that its inability to probe non-sample Opt-Ins would make proceeding as a collective unfair) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454-55 (2016) (discussing the appropriate use for representative evidence and rejecting the argument that the use of such evidence in collective and class actions is unfair)).

[57] *Snively v. Peak Pressure Control*, LLC, 347 F. Supp. 3d 294, 299 (W.D. Tex. 2018) (collecting cases).

Plaintiffs' FLSA claims should proceed on a collective basis.  Defendants' motion to decertify is denied.[58]

### III.    Plaintiffs' Amended Motion for Class Certification of State Law Claims

**P**laintiffs seek certification of a class of Missouri employees to pursue claims for unpaid overtime compensation under the Missouri Minimum Wage Law;[59] certification of a class of H-2B employees to pursue breach of contract claims under Kansas and Missouri law; and certification of a class of United States citizen employees to pursue third-party beneficiary claims or, in the alternative, unjust enrichment claims under Kansas and Missouri law.[60] Defendants oppose certification of all three classes. As will be explained, the Court concludes that certification of each class is appropriate under Federal Rule of Civil Procedure 23. Accordingly, the Court grants the motion, and it certifies classes as set forth more fully herein.

In Count II of the pretrial order, Plaintiffs assert that Defendants failed to pay overtime in violation of the Missouri Minimum Wage Law ("MMWL").  Plaintiffs move to certify the following class to assert MMWL claims:

> All employees (both H-2B and citizen) who worked for Defendants as hourly Laborers in Missouri from May 30, 2019 until July 4, 2021 and who did not receive overtime compensation after having worked more than 40 hours in a workweek.

Plaintiffs' MMWL claims mirror their FLSA claims in all pertinent respects.  That is, Plaintiffs allege that Defendants failed to pay overtime for hours worked in excess of 40 hours in a

---

[58] Defendants again attempt to draw parallels between this case and the *Blair, Swartz, Green* and *Scott* cases from this District.  For the reasons stated earlier, none of these cases are persuasive in the context of this case.

[59] Mo. Rev. Stat. § 290.505.

[60] Plaintiffs also seek the appointment of Plaintiffs' attorneys as class counsel, which Defendants do not oppose.

workweek. Defendants' response to these claims mirror their defense to the FLSA claims—each putative class member was classified as exempt under one or more of the exemptions detailed above such that overtime pay was not required..

In Count III, Plaintiffs assert that Defendants entered into contracts with a class of H-2B workers by submitting visa applications to the United States, representing in those applications that they would pay overtime compensation to H-2B workers, and accepting H-2B workers pursuant to those applications.  Plaintiffs claim that Defendants then breached those contracts by failing to pay overtime as promised in the applications.  Plaintiffs move to certify the following class to assert breach of contract claims:

> All H-2B employees who worked for Defendants as hourly Laborers anytime from May 30, 2017 until July 4, 2021 and who did not receive overtime compensation after having worked more than 40 hours in a workweek.

Defendants contend that they have no contracts with H-2B workers for overtime pay. According to Defendants, the H-2B applications, at most, stated that Defendants would pay overtime in accordance with applicable federal law and that they appropriately classified H-2B workers as exempt from overtime under federal law.

In Count IV of the pretrial order, Plaintiffs assert that a class of citizen workers are third-party beneficiaries of the contracts between Defendants and the H-2B workers based on federal regulations requiring Defendants to pay its citizen workers the same wages as H-2B workers. Plaintiffs move to certify the following class to assert third-party beneficiary claims:

> All citizen (non-H-2B) employees who worked for Defendants as hourly Laborers from May 30, 2017 until July 4, 2021 and who did not receive overtime compensation after having worked more than 40 hours in a workweek.

As an alternative to their third-party beneficiary claims, Plaintiffs assert in Count V that this putative class is entitled to overtime compensation pursuant to an unjust enrichment or quantum

meruit theory.  Plaintiffs acknowledge in the pretrial order that Defendants' liability on Counts IV or V depends, at a minimum, upon the existence of a valid contract for overtime compensation between Defendants and the H-2B workers as alleged in Count III.  Defendants, in turn, contend that because the H-2B workers have no contractual right to overtime pay, the claims asserted in Counts IV and V necessarily fail.

Class certification of Plaintiffs' state law claims is governed by Federal Rule of Civil Procedure 23.  A class action under Rule 23 is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."[61] Under Rule 23(a), "the party seeking certification must demonstrate, first, that:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."[62] Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b).[63]   Plaintiffs assert that certification here is appropriate pursuant to Rule 23(b)(3), which applies when questions of law or fact common to class members predominate over any questions affecting only individual members and when a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.[64]  These requirements "are commonly referred to as predominance and superiority, respectively."[65]  The predominance criterion of Rule

---

[61] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).

[62] *Id*. at 345.

[63] *Id*.

[64] Fed. R. Civ. P. 23(b)(3).

[65] *Sherman v. Trinity Teen Sols., Inc*., 84 F.4th 1182, 1187 (10th Cir. 2023).

23(b)(3) is "far more demanding" than the Rule 23(a) commonality requirement.[66]  The predominance inquiry tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[67]  Generally, the predominance requirement is satisfied "if resolution of some of the legal or factual questions that qualify each member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issue subject only to individualized proof."[68]

Before turning to the specific requirements of Rule 23, the Court addresses two threshold issues raised by Defendants.  First, Defendants ask the Court to deny Plaintiffs' amended motion for class certification because Plaintiffs have modified their putative class definitions at least three times during this litigation until finally landing on the three class definitions set forth in their amended motion.  Defendants assert that they have been prejudiced by the modification because discovery is now closed and they have no opportunity to seek tailored testimony or documents relevant to these "new" class definitions.  The Court rejects this argument and discerns no prejudice to Defendants.  The Court recognized the confusion caused by the inconsistency between the class definitions set forth in Plaintiffs' initial motion for class certification and their reply to that motion.  To cure any prejudice, the Court ordered Plaintiffs to withdraw the motion or their reply to the motion.[69]  Plaintiffs elected to withdraw the motion and subsequently filed an Amended Motion for Class Certification.  The class definitions set forth in the Amended Motion are based on the same claims and classes of employees that Plaintiffs discussed in detail in their previous Reply brief—a class of H-2B workers asserting breach of

---

[66] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).

[67] *Id.* at 623.

[68] *In re American Int'l Group, Inc. Sec. Lit.*, 689 F.3d 229, 240 (2d Cir. 2012) (quotations omitted).

[69] Doc. 255.

contract claims; a class of citizen workers asserting third-party beneficiary claims and alternative equitable claims; and a class of Missouri workers asserting MMWL claims that track the FLSA claims.[70]  Defendants cannot claim surprise at this juncture and certainly have identified no specific discovery that they allegedly need to defend against these claims.

Second, Defendants assert that Plaintiffs have failed to explain how the members of each class set forth above are ascertainable.  But Plaintiffs, in their motion, have asserted that classes are easily identifiable though Defendants' employment records. Moreover, the class definitions, on their face, are based on objective criteria.  In fact, defendants were able to produce a list of employees who fit the collective definition for Plaintiffs' FLSA claims and that definition was broader than any of the three class definitions here.  Because Defendants have not shown that the class definitions are impermissibly vague or that class members cannot be readily identified from the definitions, the Court rejects this argument.[71]  The court turns, then, to the specific Rule 23 requirements challenged by Defendants.

### A.    Numerosity

In their amended motion for class certification, Plaintiffs assert that numerosity is satisfied because Defendants, for purposes of sending notice of the FLSA collective action to potential collective action members, provided a list of 830 employees who worked for Defendants in Kansas and Missouri.  According to Defendants, this evidence is inadequate to

---

[70] Doc. 169.

[71] *See Fuentes v. Jiffy Lube Int'l, Inc*., No. 2:18-CV-5174, 2024 WL 2723840, at *8 (E.D. Pa. May 28, 2024) (class of former employees was ascertainable where defendant's employment records identified employment dates and locations of these former employees); *Pino v. Harris Water Main & Sewer Contractors Inc.*, No. 17-CV-5910-KAM-RER, 2021 WL 3675148, at *9 (E.D.N.Y. Aug. 19, 2021) (defendants' ability to produce a list for FLSA purposes containing objective criteria such as job title and employment dates supported conclusion that members were ascertainable in Rule 23 certification context).

establish numerosity for any of the three classes because the list of 830 employees covers a period of time (April 28, 2020 through April 27, 2023) that does not correlate with the relevant period for each of the classes (May 30, 2017 through July 4, 2021 for the H-2B and citizen classes and May 30, 2019 through July 4, 2021 for the MMWL class). Although the list of 830 employees does not overlap entirely with the time periods set forth in the three class definitions, it is reasonable to infer from the 830 employees in that three-year period that the time periods in the three classes will nonetheless include hundreds of employees, even if that number is divided between H-2B workers and citizen workers.  In other words, Plaintiffs have appropriately relied on reasonable inferences from the available facts to estimate the size of each class.  The Court concludes that Plaintiffs have satisfied the numerosity requirement.[72]

### B.    Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class."[73]  "[A]ny competently crafted class complaint literally raises common questions," but "[w]hat matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation."[74] Plaintiffs' claim must "depend upon a common contention . . . of such a nature that . . . determination of its truth or falsity will resolve an issue that is central to the validity of each one of the [individual plaintiff's] claims in one stroke."[75] A single common question that

---

[72] *Phillip Chludzinski v. NWPA Pizza, Inc.*, No. 1:20-CV-163, 2022 WL 22887067, at \*5 (W.D. Pa. Jan. 6, 2022) (numerosity satisfied as evidenced solely by list defendants provided for purposes of sending FLSA collective action notice showing that defendants allegedly employed hundreds of class members that were subject to the pay policies alleged in the complaint).

[73] Fed. R. Civ. P. 23(a)(2).

[74] *Dukes*, 564 U.S. at 349-50 (emphasis in original) (citations and quotations omitted).

[75] *Id.*

meets this standard is enough to satisfy Rule 23(a)(2), and where Plaintiffs identify at least one common question, differences between class members' claims are less relevant. [76]

Here, Plaintiffs have identified at least one common factual or legal question that satisfies this standard for each of the three classes.  For the MMWL class, each member was classified by Defendants as exempt from overtime by virtue of the MCA exemption.  The jury can resolve all of Plaintiffs' MMWL claims in one stroke by finding that lawn and landscape workers do or do not qualify as exempt under the MCA exemption in light of those workers' common job experiences.[77]  For the H-2B class, common questions include whether the H-2B regulatory documents submitted by Defendants during the H-2B application process constitute an enforceable contract and, if so, whether that contract included a promise to pay overtime. [78] These questions can be answered on a class-wide basis using common proof. And because the third-party beneficiary and unjust enrichment claims of the citizen-worker class necessarily depend on an enforceable contract between Defendants and the H-2B employees, the same common questions exist for that class.

Defendants contend that Plaintiffs cannot establish commonality for the MMWL class based on the numerous individualized defenses at play coupled with the varied employment settings of each putative class member.  In support of their argument, Defendants incorporate

---

[76] *Id*. at 359 ("We consider dissimilarities not in order to determine (as Rule 23(b)(3) requires) whether common questions *predominate*, but in order to determine (as Rule 23(a)(2) requires) whether there *is* even a single common question.") (emphasis in original) (quotation and alteration omitted); *Sherman v. Trinity Teen Solutions, Inc*., 84 F.4th 1182, 1192 (10th Cir. 2023) (commonality requires only a single question of law or fact common to the class).

[77] *Drake v. Steak N Shake Operations, Inc*., 286 F. Supp. 3d 1040, 1052 (E.D. Mo. Dec. 22, 2017) (commonality satisfied for MMWL class where each class member was classified as exempt under blanket policy and members shared substantially similar job duties).

[78] Since the elements for breach of contract are virtually the same under Kansas and Missouri law, the fact that different states' laws apply to different class members is not an obstacle to certification. *See Albelo v. Epic Landscape Prods., LC*, No. 4:17-CV-0454-DGK, 2021 WL 2651809, at *3 (W.D. Mo. June 28, 2021).

their memorandum in support of their motion to decertify the FLSA collective.   For the reasons explained in connection with the Court's denial of that motion, the Court rejects this argument and finds that Plaintiffs easily have cleared the "low bar" for showing commonality with respect to the MMWL class.[79]

With respect to the H-2B class, Defendants argue that a determination of whether a contract was formed will require "person-by-person" evidence.   According to Defendants, each individual class member will need to testify as to whether they saw Defendants' H-2B application documents; whether they interpreted those documents as an offer of employment; whether there was a "meeting of the minds" as to the essential terms of the contract alleged by Plaintiffs; and whether Defendants' subsequently modified, either orally or in writing, any promises with respect to each individual class member.   In making this argument, Defendants have misconstrued the nature of the contract alleged by Plaintiffs.   In fact, "numerous courts have allowed H-2B workers to advance a breach of contract claim based on the same contractual theory as that advanced by Plaintiffs" here.[80]   As explained by the Eighth Circuit in *Cuellar-Aguilar v. Deggeller Attractions, Inc.*, a "meeting of the minds" is not the exclusive mechanism for establishing the terms of a contract under state law.[81]   Courts have recognized that "the law in effect at the time a contract is made forms part of the contract as if it had been expressed in the contract."[82]   Consistent with that principle, most courts faced with whether the terms of labor

---

[79] *Drake*, 286 F. Supp. 3d at 1052.

[80] *Cailao v. Hotelmacher LLC*, CIV-17-800-SLP, 2019 WL 13159739, at *7 (W.D. Okla. Feb. 5, 2019) (collecting cases).

[81] 812 F.3d 614, 619 (8th Cir. 2015).

[82] *Id.* (applying Arkansas law) (citing *Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 130 (1991) ("Laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as if they had been expressly referred to or incorporated in its terms.") (quoting *Farmers' & Merchs.' Bank of Monroe v. Fed. Reserve Bank of Richmond*, 262 U.S. 649, 660, (1923))).

certification applications, including any agreement to pay the prevailing wage, form a part of the workers' contracts "have held that H-2, H-2A, and H-2B workers can enforce a federally mandated wage rate under state contract law."[83]  While the court need not decide at this juncture whether Defendants' applications and the DOL's labor certifications constitute a contract, it is clear that the individualized evidence highlighted by Defendants will not be necessary to prove the particular theory advanced by the H-2B class.  Commonality is satisfied here.[84]

Finally, with respect to the citizen-worker class, Defendants contend that because the third-party beneficiary or unjust enrichment claims of this class necessarily hinge on the contract claims of the H-2B class, the same individualized questions that Defendants set forth above negate any common questions on the citizen-worker claims.  For the same reasons that the Court rejected this argument in connection with the H-2B contract claims, the Court rejects this argument here.  Plaintiffs have established commonality with respect to the claims of the citizen-worker class.

C.    Typicality/Adequacy

---

[83] *Id.* at 619-20 (citing *Salazar–Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1341 (5th Cir. 1985) (adopting H–2 workers' argument that "because [the H–2] regulations have the force of law, these terms were part of [the workers'] employment agreement"); *Moodie v. Kiawah Island Inn Co., LLC*, 124 F.Supp.3d 711, 726, 2015 WL 5037038, at *12 (D.S.C. Aug. 4, 2015) ("[T]he law and regulations applicable to the H–2B program at the time were part of the contract."); *Frederick Cty. Fruit Growers Ass'n v. Martin*, 703 F. Supp. 1021, 1031 (D.D.C. 1989) ("The terms of [an H–2A] job clearance order which reflect DOL requirements become a part of the employment contract as a matter of law" even where "none of the Farmworkers saw or relied upon the promise of higher wages."), *aff'd*, 968 F.2d 1265 (D.C.Cir.1992)).

[84] *See Moodie*, 309 F.R.D. at 377 (for claims of H-2B workers, common question included whether defendant's promises to DOL and applicable H–2B regulations are a part of the H–2B workers' employment contracts with defendant); *Torres-Vallejo v. Creativexteriors, Inc*., 220 F. Supp. 3d 1074, 1081–82 (D. Colo. 2016) (common question for H-2B workers was whether defendants had a contractual obligation to pay the landscape laborers the DOL-determined prevailing wage); *Rodriquez v. Hermes Landscaping, Inc*., 2018 WL 4257712, at *4 (D. Kan. Sept. 5, 2018) (commonality satisfied for H-2B class where one common question was whether the terms and conditions of work set forth in visa application documents were incorporated into employment contracts).

Rule 23(a) also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."[85]  Like commonality, typicality "do[es] not require that every member of the class share a fact situation identical to that of the named plaintiff."[86] "Typicality requires only that the claims of the class representative and class members are based on the same legal or remedial theory."[87] Rule 23(a)'s adequacy of representation requirement is satisfied if the named plaintiffs and their counsel have no conflicts of interest with other class members and if they will prosecute the action vigorously on behalf of the class.[88]  The court addresses typicality and adequacy together because Defendants have asserted the same challenge to both.

Plaintiffs ask the Court to appoint Plaintiff Leonel Quinones Vargas as Class Representative for the class of Missouri workers asserting MMWL claims and for the class of H-2B workers asserting breach of contract claims.  Plaintiffs ask the Court to appoint Plaintiff Jose Gonzalez Gomez as Class Representative for the class of citizen workers asserting third-party beneficiary (or, alternatively, unjust enrichment) claims. According to Plaintiffs, Mr. Vargas's claims are identical to those of the classes he seeks to represent and, similarly, Mr. Gomez's claims are identical to those of the class he seeks to represent.  Plaintiffs further assert that neither proposed representative has any conflicts of interest with putative class members and that counsel is qualified, experienced and able to vigorously conduct the proposed litigation.

In their response, Defendants do not contest the absence of conflicts or that class counsel is competent.  Rather, Defendants assert that Mr. Vargas's and Mr. Gomez's claims are subject

---

[85] Fed. R. Civ. P. 23(a)(3).

[86] *Sherman v. Trinity Teen Sols., Inc*., 84 F.4th 1182, 1193 (10th Cir. 2023) (citation omitted).

[87] *Id*.

[88] *Rutter v. Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1187-88 (10th Cir. 2002).

to unique defenses that other class members do not share and that will "usurp" their time and energy—namely, "whether they fall under an FLSA exemption, and therefore have no claim for overtime under the FLSA."  But as discussed in detail above in connection with the motion for decertification, Defendants uniformly classified all lawn and landscape laborers as exempt from overtime under the MCA exemption and there is evidence that those laborers all shared the same primary job duties.  It appears, then, that this defense will not be unique to the class representatives but is one that will be asserted against all class members for all claims—the MMWL, breach of contract, and third-party beneficiary claims.  For that reason, there is no reason to believe that litigating this defense will take time and energy away from the claims of putative class members because all class members will have an interest in litigating the exemption issue.[89]  And to the extent Mr. Vargas or Mr. Gomez might also be classified as exempt under the administrative or agricultural exemptions (which Defendants do not suggest), the application of those exemptions does not preclude certification or render the claims of Mr. Vargas and Mr. Gomez atypical of the claims of other putative class members, particularly as issues relating to those two exemptions may ultimately be resolved on motion practice.[90]  In the end, all members of each class share the same legal theory—they were not paid overtime wages

---

[89] *Wood v. Mike Bloomberg 2020, Inc.*, ___ F. Supp. 3d ___, No. 1:20-CV-2489-LTS-GWG, 2024 WL 3952718, at *7 (S.D.N.Y. Aug. 27, 2024) (typicality satisfied where class members shared the same primary job duties and were all subjected to blanket exemption policy).

[90] *Jimenez v. GLK Foods, LLC*, No. 12-C-209, 2014 WL 2515398, at *6 (E.D. Wis. June 4, 2014) (typicality should primarily be determined with reference to the defendants' actions as opposed to the defenses they might have with respect to certain class members) (citing *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011)).

despite Defendants' obligation to pay those wages.[91]  The Court, then, finds that typicality and adequacy are satisfied as to all three classes.[92]

### D.    *Predominance*

Rule 23(b)(3) allows a class action to be certified if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members."[93] While the predominance requirement is related to Rule 23(a)(2)'s commonality requirement, the predominance requirement is "more demanding,"[94] and "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case."[95] To assess predominance, the Court determines "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."[96] "Common, aggregation-enabling issues are those that are 'susceptible to generalized, class-wide proof' or for which 'the same evidence will suffice for each member to make a prima facie showing'; individual, aggregation-defeating issues are those for which 'members of [the] proposed class will need to present evidence that varies from member to

---

[91] *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 126 (D. Colo. 2016) (typicality satisfied where defendants' application of an alleged overtime avoidance policy was universally applied to the proposed class of employees and plaintiff's claims challenged the same conduct under the same legal and remedial theories as the claims of the absent class).

[92] Defendants made one additional challenge to typicality.  According to Defendants, typicality is defeated because some class members will have two class representatives (*i.e.*, those who are members of the MMWL class and members of the citizen-class asserting third-party beneficiary claims), suggesting that neither representative is typical of the individuals they purport to represent.  Defendants cite no authority for this argument.

[93] Fed. R. Civ. P. 23(b)(3).

[94] *Sherman v. Trinity Teen Sols., Inc.*, 84 F.4th 1182, 1194 (10th Cir. 2023) (quoting *Naylor Farms, Inc. v. Chaparral Energy, LLC,* 923 F.3d 779, 789 (10th Cir. 2019) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013))).

[95] *Id*. (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

[96] *Id.* (quoting *Tyson Foods, Inc.*, 577 U.S. at 453 (quoting 2 W. Rubenstein, *Newberg on Class Actions* § 4:49 at 195–96 (5th ed. 2012))).

member.'"[97] A plaintiff can satisfy the predominance requirement if at least one common issue predominates, "even if there remain individual issues, such as damages, that must be tried separately."[98] To determine whether the predominance requirement is satisfied, the Court begins with the elements of the classes' underlying causes of action and determines which elements are amenable to common proof.[99]

Missouri law regulating overtime compensation is to be interpreted in accordance with the FLSA.[100] Consistent with that parallel structure, the overtime requirements of the MMWL "shall not apply to employees who are exempt from federal minimum wage or overtime requirements including, but not limited to, the exemptions or hour calculation formulas specified in 29 U.S.C. Sections 207 and 213, and any regulations promulgated thereunder."[101] To prove their MMWL claims, then, the MMWL class must prove that they worked more than 40 hours in a workweek and that they did not receive overtime compensation for those excess hours.[102] It is Defendants' burden to prove that the class members qualify as exempt.[103]

With respect to the MMWL class, Plaintiffs assert that class-wide issues predominate for the same reasons that decertification of the FLSA collective is inappropriate—Defendants applied the MCA exemption uniformly to all Missouri laborers and those laborers shared similar job duties.[104] Indeed, courts "routinely have found predominance where . . . the challenged

---

[97] *Id.* (quoting *Tyson Foods, Inc.*, 577 U.S. at 453 (quoting 2 W. Rubenstein, *Newberg on Class Actions* § 4:49 at 196–97 (5th ed. 2012))).

[98] *Id.* (quoting *Naylor Farms*, 923 F.3d at 789).

[99] *Id.* at 1194-95 (citing *Menocal v. GEO Group, Inc.,* 882 F.3d 905, 915 (10th Cir. 2018)).

[100] *See Stanbrough v. Vitek Sols., Inc.*, 445 S.W.3d 90, 97 (Mo. Ct. App. 2014); Mo. Rev. Stat. § 290.505.4.

[101] Mo. Rev. Stat. § 290.505.3.

[102] *Id.* § 290.505.1.

[103] *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 826 (10th Cir 2012).

[104] *See Drake v. Steak N Shake Operations, Inc*., 286 F. Supp.3d 1040, 1051 (E.D. Mo. Dec. 22, 2017) (Although the standards differ, "it is not mere coincidence that courts facing parallel motions to decertify an FLSA

[wage] policy is common to the class as a whole and the proposed class members share similar job duties."[105]  As discussed above in connection with the FLSA claims, Plaintiffs' evidence shows that the lawn and landscape laborers spent the overwhelming majority of their time performing the same manual-labor tasks.  And it is undisputed that Defendants applied the MCA exemption uniformly.  Thus, whether Defendants violated the MMWL by classifying all Missouri lawn and landscape laborers as exempt from overtime compensation is not only a common issue that is susceptible to generalized, class-wide proof but it is the issue that predominates over all other issues.  Predominance is satisfied for the MMWL class.[106]

The contract claims of the H-2B class arise under Kansas and Missouri law.  Regardless of which law applies, the class will have to prove the existence and terms of a contract between the parties.[107] As discussed above, the contract theory advanced by Plaintiffs is that Defendants' visa applications and the DOL's labor certifications constitute a contract that included a promise to pay overtime.  Although Defendants raise the same challenges here that they did with respect to commonality, the Court finds that predominance is satisfied.  In fact, the breach of contract claims asserted by the H-2B class raise only issues common to the class, including whether the

---

collective action under Section 216(b) and to certify a class action under Rule 23 have tended to allow either both actions or neither to proceed on a collective basis.") (discussing parallel MMWL claims).

[105] *Florece v. Jose Pepper's Restaurants, LLC*, No. 20-2339-ADM, 2021 WL 5038773, at *5 (D. Kan. Oct. 29, 2021) (collecting cases); *Wood v. Mike Bloomberg 2000, Inc*., ___ F. Supp. 3d ___, 1:20-CV-2489-LTS-GWG, 2024 WL 3952718, at *10 (S.D.N.Y. Aug. 27, 2024) (for cases involving misclassification of nonexempt employees, predominance is satisfied so long as there is evidence that proposed class members' primary job duties are largely similar).

[106] *Drake*, 286 F. Supp. 3d at 1053 (predominance satisfied for MMWL class where all class members were subject to same exemption defense and common question of exemption predominates the selective differences highlighted by defendant); *Wood*, ___ F. Supp. 3d at ___, 2024 WL 3952718, at *10-11 (predominance satisfied for state minimum wage law class where all proposed members were classified as exempt and all performed largely same duties); *Pruess v. Presbyterian Health Plan, Inc*., ___ F. Supp. 3d ___, 1:19-cv-00629-DHU-JFR, 2024 WL 3844965, at *13-14 (D.N.M Aug. 16, 2024) (predominance satisfied for state minimum wage law class where employees shared similar primary job duties and defendant uniformly classified as exempt).

[107] *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013); *Keveney v. Missouri Mil. Acad*., 304 S.W.3d 98, 104 (Mo. 2010).

visa applications and corresponding labor certifications constitute an enforceable contract; whether the terms of any contract include a promise to pay overtime; and whether Defendants breached those terms.  At this juncture, the Court discerns no issues specific to individual members of the class with respect to liability.[108]

Finally, the Court turns to the claims asserted by the proposed citizen-worker class.  To establish their claims for breach of a third-party beneficiary contract, the class must prove the existence of a contract and that the contract was intended for the benefit of those class members.[109]  The predominant issues with respect to these claims, then, will mirror (and, in fact, hinge upon) the H-2B class issues, including whether the visa applications and corresponding labor certifications constitute an enforceable contract; whether the terms of any contract include a promise to pay overtime; and whether Defendants breached those terms.  An additional class-wide issue includes whether the contract, if it exists, was intended for the benefit of citizen workers.  As with the claims of the H-2B class, the Court discerns no individual liability issues at play here.  Similarly, predominance is satisfied with respect to the alternative claim of unjust enrichment advanced by the citizen-worker class.  To prove this claim, the class must show a benefit conferred upon Defendants by Plaintiffs; an appreciation or knowledge of the benefit by Defendants; and the acceptance or retention by Defendants of the benefit under such circumstances as to make it inequitable for Defendants to retain the benefit without payment of

---

[108] *Moodie v. Kiawah Island Inc. Co., LLC*, 309 F.R.D. 370, 380 (D.S.C. 2015) (predominance satisfied on breach of contract claims of H-2B workers advancing same contract theory and finding no individual issues as to liability); *Ramirez v. GLK Foods, LLC*, No. 12-C-210, 2014 WL 2612065, at *9 (E.D. Wisc. June 11, 2014) (breach of contract claim based on H-2B visa applications satisfied predominance where questions of whether the applications created employment contracts and, if so, whether the contracts contained certain terms predominated over any other issues).

[109] *State ex rel. Stovall v. Reliance Ins. Co*., 107 P.3d 1219, 1231 (Kan. 2005); *Thieret Family, LLC v. Delta Plains Servs., LLC*, 637 S.W.3d 595, 603 (Mo. Ct. App. 2021).

its value.[110]  Plaintiffs' theory here is that because Defendants agreed in connection with the H-2B visa application process to pay their H-2B workers overtime, Defendants is required under federal regulations to pay its citizen workers overtime.  As with the third-party beneficiary claims, the unjust enrichment claims necessarily hinge on common questions relating to the existence of a contract with the H-2B workers—whether a contract exists by virtue of the H-2B visa applications and, if so, whether the terms of that contract include a promise to pay overtime to H-2B workers.  These common questions clearly predominate this litigation.

E.     *Superiority*

Federal Rule of Civil Procedure 23(b)(3) also requires that Plaintiffs demonstrate "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[111]  When determining superiority, the following factors may be relevant:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.[112]

The superiority requirement is satisfied when a class action would allow for the "vindication of the rights of groups of people who individually would be without effective strength to bring their

---

[110] *J.W. Thompson Co. v. Welles Products Corp*., 243 Kan. 503, 512 (1988); *Binkley v. Am. Equity Mortg., Inc.*, 447 S.W.3d 194, 199 (Mo. 2014).

[111] Fed. R. Civ. P. 23(b)(3); *see also In re Universal Serv. Fund Tel. Billing Pracs. Litig*., 219 F.R.D. 661, 679 (D. Kan. 2004) ("The requirement that a class action be the superior method of resolving the claims insures that there is no other available method of handling the litigation which has greater practical advantages.").

[112] Fed. R. Civ. P. 23(b)(3)(A)–(D).

opponents into court at all."[113]  The Tenth Circuit has recognized that "the class action device is especially pertinent to vulnerable populations," and that "class members' limited understanding of the law, limited English skills, or geographic dispersal therefore weigh in favor of class certification."[114]

In their motion, Plaintiffs urge that considerations pertinent to the superiority analysis weigh heavily in favor of certification.  Plaintiffs highlight that the relatively modest wage claims held by class members here provide little incentive for any individual to bring an individual claim.  Independently, the Court recognizes that, at least for the H-2B class members, there is likely a language barrier and geographic dispersal and, for all class members, general legal unsophistication.[115]  While Defendants assert that individual issues requiring unique evidence will overwhelm the jury such that individual treatment is more appropriate, they highlight no specific difficulties in managing the classes and do not suggest that any other factor pertinent to the superiority analysis cuts against certification.  In the absence of any such showing, the Court finds that superiority is satisfied as to all classes.  There is "no compelling reason to host numerous individual trials" when the central questions for and the defenses against the claims in each class are largely the same.[116]

---

[113] *Menocal v. GEO Group, Inc*. 882 F.3d 905, 915 (10th Cir. 2018) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)).

[114] *Id*. (citations omitted).

[115] *Rodriquez v. Hermes Landscaping, Inc*., No. 17-2142, 2018 WL 4257712, at *6 (D. Kan. Sept. 5, 2018) (finding superiority satisfied for class of H-2B workers; individual claims likely "not feasible given their geographic dispersal, the language barrier, their general legal unsophistication, and especially, the reality that it would not be economically feasible to bring these claims individually").

[116] *Drake v. Steak N Shake Operations, Inc*., 286 F. Supp. 3d 1040, 1053 (E.D. Mo. Dec. 22, 2017) (superiority satisfied for MMWL class where central question regarding application of exemption was the same and employment settings largely identical); *see also Moodie v. Kiawah Island Inn Co., LLC*, 309 F.R.D. 370, 380 (D.S.C. 2015) (superiority satisfied for class of H-2B workers who were residents of a foreign country, likely to have limited financial resources, unfamiliar with the U.S. Court system, and had relatively small claims).

**IV.     Conclusion**

For the foregoing reasons, the Court finds that this action may proceed as a collective

action under 29 U.S.C. § 216(b) and a class action under Federal Rule of Civil Procedure

23(b)(3).  For purposes of Plaintiffs' FLSA claims, the Court finally certifies the following

collective:

> All current and former lawn and landscape workers, who worked for the
> Defendants at any time from April 28, 2020 through April 27, 2023.

For purposes of Plaintiffs' MMWL claims, the Court certifies the following class:

> All employees (both H-2B and citizen) who worked for Defendants as hourly
> Laborers in Missouri from May 30, 2019 until July 4, 2021 and who did not
> receive overtime compensation after having worked more than 40 hours in a
> workweek.

For purposes of Plaintiffs' breach of contract claims, the Court certifies the following class:

> All H-2B employees who worked for Defendants as hourly Laborers anytime
> from May 30, 2017 until July 4, 2021 and who did not receive overtime
> compensation after having worked more than 40 hours in a workweek.

For purposes of Plaintiffs' third-party beneficiary claims or, alternatively, unjust enrichment

claims, the Court certifies the following class:

> All citizen (non-H-2B) employees who worked for Defendants as hourly
> Laborers from May 30, 2017 until July 4, 2021 and who did not receive
> overtime compensation after having worked more than 40 hours in a
> workweek.

The Court appoints Leonel Quinones Vargas as Class Representative for the class asserting

MMWL claims and for the class asserting breach of contract claims.  The Court appoints Jose

Gonzalez Gomez as Class Representative for the class asserting third-party beneficiary claims or,

alternatively, unjust enrichment claims.  Pursuant to Federal Rule of Civil Procedure 23(g), the

Court appoints the Hodgson Law Firm LLC and Bertram & Graf, LLC as Class Counsel.

Rule 23(c)(2)(B) provides that for classes certified under Rule 23(b)(3), the Court must direct notice to the class members. Plaintiffs have not proposed any form or manner of notice under this rule; thus, the Court defers its direction of notice to the certified classes. Plaintiffs shall submit to the Court a proposed plan for notice to the class members pursuant to Rule 23(c)(2)(B) on or before **Monday, November 18, 2024**.

**IT IS THEREFORE ORDERED BY THE COURT** Defendants' motion to decertify Plaintiffs' FLSA collective (doc. 250) is **denied** and the Court finally certifies the collective described herein.

**IT IS FURTHER ORDERED BY THE COURT THAT** Plaintiffs' amended motion for class certification, appointment of class representatives and appointment of class counsel (doc. 267) is **granted** and the Court certifies three classes pursuant Rule 23(b)(3) as set forth herein. Plaintiffs shall submit to the Court a proposed plan for notice to the class members pursuant to Rule 23(c)(2)(B) on or before **Monday, November 18, 2024**.

**IT IS SO ORDERED.**

Dated: October 29, 2024

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE